527 P.2d 1257

Larry R. DUFF, Trustee in Bankruptcy in the Matter of Ray Wilburn Goff, Bankrupt, Plaintiff-Respondent,

Ray Wilburn Goff, Bankrupt, Petitioner in Intervention and Appellant,

v.

Dwayne DRAPER, dba M & D Irrigation and Redi Rain Manufacturing Co., Inc., dba Redi Rain of Idaho, a corporation, Defendant-Respondents.

No. 11419.

Supreme Court of Idaho.

Sept. 16, 1974.

300

Webb, Pike, Burton & Carlson, Twin Falls, for petitioner in intervention-appellant.

Goodman, Duff & Chisholm, Rupert, for Larry R. Duff.

Church, Church & Snow, Burley, for Dwayne Draper.

Richard Rosenberry, Caldwell, for Redi Rain Mfg. Co., Inc.

BAKES, Justice.

Plaintiff-respondent Larry R. Duff is the trustee in bankruptcy of Ray Wilburn Goff, petitioner in intervention and appellant herein. Duff, as trustee in bankrupt-

cy, brought an action on behalf of the bankrupt's estate for an alleged conversion of certain sprinkler equipment against the defendant-respondents Dwayne Draper, dba M & D Irrigation, and Redi Rain Manufacturing Co., Inc. After the statute of limitations for conversion of personal property (§ 5–218, Idaho Code) had appeared to have run, the bankrupt Goff sought to intervene in the trustee's action. Goff claimed that the irrigation equipment which was allegedly converted had been affixed to his homestead, which ·had been set aside by the United States District Court as exempt property,[1] and therefore the cause of action for conversion was the bankrupt Goff's and not the trustee's.

The motion to intervene was denied by the trial court on the alternative grounds that (1) if the equipment was in fact personalty, the cause of action for its conversion passed to the trustee; (2) even if the equipment was a fixture, the proposed complaint in intervention showed on its face that more than three years had transpired from the date of the conversion to the date of the motion to intervene, and therefore the claim was barred by § 5–218, I.C.; and (3) since Goff had received actual notice from the trustee by a letter dated April 11, 1972, that the trustee was not going to assert Goff's personal claims and that Goff should obtain his own attorney and pursue those claims, and since Goff did not file his motion to intervene until April 25, 1973, more than a year later, that the motion to intervene was not "timely" as required by Rule 24(a), I.R.C.P.

On appeal, Goff argues that his motion to intervene was "timely" within the meaning of Rule 24(a), I.R.C.P., and that therefore he was entitled to intervene as a matter of right. Regarding the statute of limitations problem, Goff argues that the statute of limitations is an affirmative defense which must be plead under Rule 8(c) and

cannot be raised at the time of determining the sufficiency of a complaint in intervention. Appellant Goff further argues that since the claim of conversion which he is raising is the same claim raised by the trustee in his original complaint, that the complaint in intervention would in effect be an amendment of the original trustee's complaint which would relate back to the filing of the original complaint under Rule 15(c), I.R.C.P.

The first issue which we must determine is whether or not petitioner Goff was entitled to intervene as a matter of right under Rule 24(a), I.R.C.P. Rule 24(a) provides:

"*Rule* 24(a). *Intervention—Intervention of Right.*—Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

The rule first requires that the motion be "timely" and further that the petitioner fall within one of the three sub-categories of Rule 24(a).

Regarding the issue of timeliness, the trial of the main action was set for April 24, 1973. Apparently, on the day before the trial, the court was orally advised of the intention of the petitioner to file his complaint in intervention, and as a result the trial court vacated the trial setting on April 24, 1973. On April 25, 1973, the motion to intervene was filed. Prior to the adoption of Rule 24, the practice in Idaho was governed by § 5–322 which provided that any petition to intervene filed "before

---

1. The bankruptcy referee apparently denied the bankrupt's claim of exemption, but on review to the United States District Court the bankrupt's real property, which consisted of an unpatented homestead, was set over to the bankrupt as exempt property under the United States Homestead Act.

the trial" was timely. *See* Anderson v. Ferguson, 56 Idaho 554, 57 P.2d 325 (1936). It is unnecessary for us to decide whether or not the "timeliness" requirement of I.C. § 5–322 conflicts with Rule 24, and is thus superceded as provided by Rule 86, I.R.C.P. On the date that the motion in intervention was actually filed, April 25, 1973, the case was no longer set for trial, having been vacated the day before by the trial court. Whether or not the applicant has been dilatory is not the test of timeliness, but the extent of prejudice which any delay resulting from the granting of the application will cause to the existing parties. 7A Wright and Miller, Federal Practice & Procedure, § 1916. In the absence of some finding by the trial court that the allowance of the motion to intervene would delay the resetting of the case for trial to the serious detriment of the existing parties, the motion in intervention was "timely" within the meaning of Rule 24(a), I.R.C.P. There is no such showing in the record, and therefore the petition in intervention should not have been denied because of "untimeliness."

Appellant contends that his motion to intervene comes within the provisions of Rule 24(a)(2) in that the representation of his interest by the trustee in bankruptcy is inadequate and that the petitioner may be bound by any adverse judgment which would be rendered against the trustee in the action. The language of Rule 24(a)(2) indicates that the drafters did not contemplate that the petitioner in intervention be required to show that the representation "is" inadequate and that the petitioner in intervention "is" bound by the judgment in the main action. It was sufficient that the petitioner show that the representation "may" be inadequate and that the applicant "may" be bound by a judgment in the action. The record supports the petitioner's position that the trustee's representation "may" be inadequate. Petitioner was asserting that there were substantially more damages as a result of the alleged conversion than the trustee was as-serting in the action. The trustee specifically advised the petitioner in intervention by his letter dated April 12, 1972, that he intended only to file the claim for the $5,700 value of the sprinkler equipment allegedly converted, and that he did not intend to seek any other damages to the realty or the loss of crops, etc., even though apparently requested to do so by Goff. Respondent Draper argues strenuously that the trustee is the representative of the bankrupt, and that therefore it is presumed that the applicant's interest is adequately represented in the absence of a compelling showing to the contrary, citing 7A Wright & Miller, Federal Practice & Procedure, § 1909, p. 524. However, this argument misconstrues the function of the bankruptcy trustee. Under Section 70(a) of the Bankruptcy Act, 11 U.S.C.A. § 110(a) the trustee is "vested by operation of law with the title of the [property of the] bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt . . . . " Although the trustee's claims are thus derived from the bankrupt, in marshalling the assets of the bankrupt's estate he is not acting as the representative of or on behalf of the bankrupt, but as a representative of the creditors, and his interests are, for the most part, adverse and antagonistic to the bankrupt's. "In bankruptcy, however, the beneficiaries are not the bankrupt, but the creditors. For that reason the law gives to them alone the choice of trustee; the bankrupt has no part in it, because presumably he has no interest in it;" (In re Lewensohn, 98 F. 576, 581 (S.D.N.Y., 1899). "In general, the trustee represents not the bankrupt, but the general creditors of the estate as against the secured creditors." (Matney v. Combs, 171. Va. 244, 198 S.E. 469, 473 (1938). The adverse interests between the trustee and the bankrupt in this case are evident by the apparent dispute over the homestead exemption. The trustee's action in this case is an extension of that dispute in that the issue raised by the petition to intervene alleges that the cause

of action for the alleged conversion of the sprinkler pipe was for injury to the exempt real property and thus the property of the bankrupt Goff. It would hardly be conducive to the responsibility of fiduciaries to require them to be the representative of a bankrupt and at the same time require them to assert antagonistic positions in litigation. Respondent's reliance on Kheel v. American S.S. Owners Mut. Protection & Indem. Assoc., 45 F.R.D. 281 (S.D.N.Y.), is distinguishable on that ground. There the intervenors were creditors of the bankrupt estate, not the bankrupt, and thus the court held that the trustee adequately represented their interests. We hold that the trustee does not adequately represent the applicant's interest within the meaning of Rule 24(a).

The next question which arises is whether or not the petitioner "is or may be bound by a judgment" against the trustee in bankruptcy in the original action. Initially, the use of the word "may" in Rule 24(a)(2) had not been uniformly interpreted in the lower federal courts. In 1961, the Supreme Court of the United States, in Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), said that Rule 24(a)(2) requires that the judgment in the action be *res judicata* against the intervenor before he can intervene. However, this construction resulted in some undesirable results [2] and, as a result, in subsequent cases the lower federal courts went to great lengths to distinguish the holding in *Sam Fox* in order to minimize its impact. Their direction has been toward the approach taken by the 2nd Circuit Court of Appeals in International Mortgage & Investment Corp. v. Von Clemm, 301 F.2d 857 (1962), which stated:

"Bearing in mind that Rule 1 of the Federal Rules of Civil Procedure requires that the rules be construed 'to secure the just, speedy and inexpensive determination of every action,' we conclude that in determining whether an applicant

'is or may be bound,' the district court is required to apply a practical test.

"It is enough under Rule 24(a)(2) that an adverse judgment would seriously prejudice those who seek to intervene, at least where allowance of intervention will not introduce extraneous issues into the suit, threaten to disrupt the action, or run counter to the policy of the statute under which the action is brought." 301 F.2d at 861–862.

The Federal Advisory Committee for the Rules of Civil Procedure acknowledged the undesirability of the United States Supreme Court's rule in the *Sam Fox* case, and the 1966 amendment to the Federal Rules of Civil Procedure adopted by the United States Supreme Court specifically amended Rule 24(a) by consolidating and rewording 24(a)(2) and (3) to change that result. The amended Rule 24(a)(2) now reads:

"F.R.C.P. 24(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The Advisory Committee commentary indicates that one of the express purposes of the 1966 amendment was to modify the interpretation of Rule 24(a)(2) in the *Sam Fox* case. 7A Wright & Miller, Federal Practice & Procedure, § 1908, p. 514, fn. 50. Atlantis Dev. Corp. v. United States, 379 F.2d 818 (5th Cir. 1967); 81 Harv.L.R. 356, 401–403.

"If the 'bound' language was read literally in the sense of res judicata, it could defeat intervention in some meritorious cases. . . . This reasoning [of Sam Fox] might be linguistically justified by

2. 7A Wright & Miller, Federal Practice & Procedure, § 1909, p. 519 et seq.

**304**

original Rule 24(a)(2); but it could lead to poor results." 3B Moore's Federal Practice, ¶ 24.01[10], p. 24–17, Committee Note of 1966 to Subdivision (a).

■ With this background of the development of the Federal Rule 24(a)(2), we must decide whether or not the bankrupt Goff in this case "may be bound" by any adverse judgment which may be rendered against the trustee in the original action, assuming that this intervention were not allowed. Admittedly, the judgment in the original action would not be "res judicata" in the traditional sense because the bankrupt Goff was not a party to the action. However, there are certain circumstances in which a person who is not a party to an action may nevertheless be bound by the results of that action where the claim which he subsequently brings is the same claim as adjudicated in the original action. Such a result, which is generally known as judicial estoppel or collateral estoppel, has been applied where the evidence adduced at the first trial is substantially the same as would be necessary to prove the claim in the second case. Thus, in Cauefield v. Fidelity & Casualty Co. of New York, 378 F.2d 876 (5th Cir. 1967), a case in which this doctrine was applied in circumstances analogous to this case, the owner of a cemetery was sued by a number of relatives of those buried in the cemetery for grave desecration because he had cleared some cemetery land which he felt was too overgrown. The action was in the state courts of Louisiana, and a jury verdict was rendered that no desecration had taken place. Cauefield and another then commenced a similar action for cemetery desecration in the federal courts. They had not been parties to the original suit that was brought in the state court. Yet the issue was the same as presented to the state court in the prior suit and the plaintiffs conceded that the evidence to be presented to the federal court would not differ materially from that previously introduced in the state court. The Fifth Circuit Court of Appeals affirmed the dismissal by the district court which applied the doctrine of judicial estoppel and refused to let the plaintiffs litigate the issue of whether or not there had been a cemetery desecration. The court, in reaching its conclusion that this was an appropriate case for the application of the doctrine of judicial estoppel, noted that although there was a separate cause of action on behalf of each relative of the persons buried in the cemetery, each cause of action consisted of identical elements because a desecration of any part of the cemetery gave rise to the action, not merely a desecration of the grave of one's relatives. Since all of the issues were thoroughly litigated once, the court refused to relitigate the same issue even though different plaintiffs were involved.

The doctrine has found application in California in several cases, one of which is fairly analogous to this case. In Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (Cal.1962), the court, speaking through Justice Traynor, held that a criminal conviction of a corporate president for conspiracy to commit grand theft and filing fraudulent insurance claims, bound the corporation in a subsequent civil action by it against an insurance company, even though the corporation was not a party to the criminal action.

■ We have found no cases cited by the parties herein, or from our own research, indicating that Idaho has ever definitively ruled on the question of collateral or judicial estoppel. We decline to speculate on what this Court's views may be on that subject, other than to note that for the purpose of Rule 24(a)(2) the doctrine "might" be applicable, and therefore if the trustee were to proceed to trial and it were determined that no conversion had in fact taken place, then the bankrupt, even if he were not a party to that action, might nevertheless be bound under the doctrine of the *Cauefield* and *Teitelbaum* cases if he were unable to present evidence materially differing from that presented by the trustee.

There is even a more compelling reason for the application of the doctrine in this case because here it is the same claim for relief which the trustee and the intervenor are asserting, i. e., conversion of the sprinkler equipment with resultant damages. It is only a question of who now owns the claim under Section 70 of the Bankruptcy Act, the trustee or the bankrupt. Thus, the plaintiff in intervention here has satisfied the requirements of our Rule 24(a)(2) that he "may be bound" by an adverse judgment against the trustee Duff under the doctrine of judicial or collateral estoppel, and therefore we conclude that petitioner has satisfied the requirements of Rule 24(a)(2) and was entitled to intervene as a matter of right in the trustee's action.

The foregoing analysis of Rule 24(a) does not finally dispose of this case, however, because as an alternative ground for denying the petition in intervention, the trial court held that because the proposed complaint in intervention showed on its face that more than three years had transpired from the date of the alleged conversion until the filing of the petition to intervene, that the action of the petitioner was barred by the statute of limitations. Appellant assigns as error this action of the trial court, alleging that the hearing upon the motion to intervene is not the appropriate place to test the sufficiency of the plaintiff's claim, the merits of his case, or the strength of the defenses.

■ Rule 24(c) requires that the motion to intervene be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." This requires a petitioner in intervention to obtain judicial approval of his complaint prior to being permitted to file it—a different procedure than the filing of an ordinary complaint which may be filed without any prior approval. However, even though prior judicial approval is required, the intervenor need not demonstrate the merits of his case. He only need establish that his complaint states a claim upon which relief may be granted. Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960).

"The proposed pleading must state a good claim for relief or a good defense, but the general rules for testing a pleading are applicable here. The pleading is construed liberally in favor of the pleader and the court will accept as true the well-pleaded allegations in the pleading." 7A Wright & Miller, Federal Practice & Procedure, ¶ 1914, at pp. 569–70.

■■ In the case before us the petition to intervene was filed more than three years after the date of the alleged conversion. This appeared to be beyond the period after which the statute of limitations would ordinarily have expired had it not been tolled for some reason. The pleadings did not set forth any allegation that the statute of limitations had not expired. The question then is whether or not the judge should have rejected the petition in intervention for the reason that the complaint in intervention did not explain why the statute of limitations was not a defense. We hold that a judge, in determining the sufficiency of a complaint accompanying a petition to intervene, shall not reject the petition on the ground that the complaint appears to allege a claim barred by the statute of limitations. Our holding is based on the following reasons. First, Rule 8(c), I.R.C.P., provides that the statute of limitations is an affirmative defense which must be asserted in a responsive pleading to the original claim. This in effect says that no complaint can be dismissed under a Rule 12(b)(6) motion for failure to state a claim merely because it does not negate any possible statute of limitations defenses. When the judge examines the adequacy of the complaint accompanying the petition to intervene, he is in essence subjecting the pleading to the analysis he would make in ruling upon a motion to dismiss under Rule 12(b)(6), i. e., asking whether a "well-pleaded defense or claim is asserted." Kozak v. Wells, *supra*. The requirement of Rule 8(c), that statute of limitations defenses to original com-

plaints be affirmatively asserted, is equally applicable to petitions to intervene. Any other rule would not only violate the pleading philosophy of Rule 8(c), but would further complicate the pleading rules by engrafting another exception on to the already complicated procedural rules.[3] Secondly, there are a number of possible ways in which the statute of limitations may have been tolled and thus the petitioner is entitled to pursue his claim against the defendants. I.C. § 5–229 provides that any time which the defendant to an action is outside the state is not to be counted as time in which the limitations period is running. I.C. § 5–234 provides that the running of the statutory period may be suspended during times when the commencement of the actions is stayed by injunction or statutory prohibition. Rule 15(c), I.R.C.P., provides that amendments to pleadings are to relate back in time to the commencement of suit, as are supplemental pleadings. The case law generally provides that the petition in intervention will relate back to the time of the original complaint where there is a community of interest or privity of contract between the original plaintiff and the petitioner in intervention. *See* Travellers Insurance Co. v. Leedy, 450 P.2d 898 (Okl.1969); Anderson v. Ferguson, 56 Idaho 554, 57 P.2d 325 (1936). There are other possible reasons why the statute of limitations may not have run at the time the petition in intervention was filed. The petition to intervene should not have been rejected merely because the complaint accompanying it failed to negate any possible statute of limitations defense that may have been raised.

In conclusion, we have determined that appellant Goff's petition to intervene was timely; that he was inadequately represented in the action by the trustee in bankruptcy Duff; that he may be bound by the results in the trustee's case and therefore a

proper intervenor under Rule 24(a)(2); and that the petition in intervention was accompanied by an adequate complaint in intervention. Accordingly, the order of the district court denying the petition in intervention is reversed, and the cause remanded for further proceedings.

Costs to appellant.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.

---

3. The recent decision of this Court in Cook v. Soltman, 96 Idaho 187, 525 P.2d 969 (1974), which permitted the statute of limitations to be raised in a 12(b)(6) motion to dismiss, is distinguishable because the Court there concluded that subsequent written memoranda submitted by both parties had converted the 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56.