560 P.2d 1315

Dana **RALPHS**, Plaintiff-Appellant,

v.

**CITY OF SPIRIT LAKE, a Municipal Corporation in the State of Idaho, and Dean Newton, Defendants-Respondents.**

No. 12289.

Supreme Court of Idaho.

Feb. 18, 1977.

Rehearing Denied March 25, 1977.

Marshall C. Aungier, of Nixon, Nixon, Lyons & Bell, Coeur d'Alene, for plaintiff-appellant.

Samuel Eismann, Coeur d'Alene, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from an order dismissing a complaint filed by plaintiff-appellant Dana Ralphs against defendant-respondent city of Spirit Lake and defendant Dean Newton. We affirm.

Upon appeal in the circumstances presented here, the allegations of and the fair inferences arising from plaintiff's complaint must be taken as established and viewed most favorably from the standpoint of the plaintiff. *Idaho Comm'n on Human Rights v. Campbell*, 95 Idaho 215, 506 P.2d 112 (1973).

The complaint and amended complaint of Ralphs allege in substance: Ralphs was in the city of Spirit Lake on or about the 25th or 26th day of May 1974, and was criminally attacked, assaulted, battered and beaten by third persons; at that time Dean Newton was the Chief of Police of Spirit Lake and was physically present at the scene when Ralphs was attacked. Newton allegedly failed to protect plaintiff from the attack and from additional attack after Ralphs was rendered helpless; at that time, Newton was acting within the scope of his employment as Chief of Police of Spirit Lake; Newton was negligent in failing to protect Ralphs from further injury from the at-

tackers after Ralphs was rendered helpless; as a proximate result of the negligence of Newton, Ralphs suffered injuries. He suffered additional injuries or damage from the attack which did not become known to Ralphs until August 10, 1975. Newton was incompetent and dangerous and the city of Spirit Lake knew or in the exercise of reasonable care should have known of these facts regarding Newton and was negligent in hiring Newton or in failing to discharge Newton. Such negligence of the city of Spirit Lake was the proximate cause of plaintiff's injuries.

Ralphs further alleged that he had filed a notice of claim on the fifth day of November 1975 and that such claim had been denied by the city of Spirit Lake. Plaintiff's original complaint was filed February 2, 1976. Upon motion therefore the complaint as against the City of Spirit Lake was dismissed with prejudice. From that order this appeal is taken. As to the complaint against Newton, that action was dismissed without prejudice and with leave to refile. The record does not demonstrate that such complaint against Newton was refiled, no assignment of error nor argument is directed toward that portion of the district court's order of dismissal and we do not deem such to be before the Court on this appeal.

Although several grounds for dismissal of the complaint were raised below, only one need be discussed herein since it is dispositive of the action. We hold that Ralphs failed to file a notice of claim with the city within the 120-day period of time mandated by the Idaho Tort Claims Act. That statute, I.C. § 6–906, provides:

"All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or any omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred twenty (120) days from the date the *claim arose or reason-*

*ably should have been discovered,* whichever is later." (Emphasis supplied.)

It is the principal argument of Ralphs that some of the injuries and damages resulting from the attack and assault and battery were not discovered by him until long after the expiration of the 120-day mandated time period, to wit, on or about the tenth day of August 1975. Ralphs therefore argues that a question of fact exists as to whether the alleged additional injuries and damages reasonably should have been discovered prior to the period of 120 days preceding August 10, 1975. We disagree. Ralphs argues that the explicit reference in I.C. § 6–906 relating to reasonable discovery thereby extends the discovery rule of professional malpractice cases into the area of governmental torts. This we need not decide. Where there is a coincidence of a negligent act and the occurrence of damages a "wrongful act" has been committed for which a legal remedy in damages is generally available. Therefore the applicable statutes begin to run from the occurrence of the wrongful act albeit the full extent of the damages may be unknown or unpredictable at that initial time. *Little v. Emmett Irr. Dist.*, 45 Idaho 485, 495, 263 P. 40 (1928); *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965); *Tinkoff v. United States*, 211 F.2d 890 (7th Cir. 1954); *Sonbergh v. MacQuarrie*, 112 Cal.App.2d 771, 247 P.2d 133 (1952). *See also, Independent School Dist. of Boise City v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975).

Here, the complaint shows on its face that any legal remedy he may have had existed immediately following the attack on that day in May of 1974 when Newton's alleged negligence allowed Ralphs to be attacked and battered and thus initially injured. The 120-day period of time mandated for notice to the governmental entity began immediately thereon.

A clear distinction exists between the "discovery rule" in professional malpractice cases as contrasted with the instant action. In those cases the "discovery" in question was based on the plaintiff's lack of knowledge of the defendant's actions or omissions

which established tort liability and that he thereby had a cause of action. The rationale for such discovery rule in professional malpractice cases is that the client or patient generally lacks the expertise to evaluate or the opportunity to see or understand the defendant's performance of health care. Hence, it was determined to be grossly unfair to deprive a patient or client of the opportunity to recover for such negligence prior to the time that he knew of such negligence. *See, Johnson v. Stoddard*, 96 Idaho 230, 526 P.2d 835 (1974); *Cook v. Soltman*, 96 Idaho 187, 525 P.2d 969, 972 (1974); *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1970); *Billings v. Sisters of Mercy of Idaho*, 86 Idaho 485, 389 P.2d 224 (1964).

██ Here, it is clear that on the date of the incident plaintiff Ralphs was aware that he had been attacked, assaulted and battered, that the Chief of Police was allegedly negligent in permitting the attack and that the city of Spirit Lake was negligent in employing a man of Newton's alleged characteristics and in failing to discharge him. The fact that plaintiff Ralphs became at a later time aware of additional injuries or damages is not sufficient to excuse his earlier knowledge of the alleged wrongful act of the physical assault upon him caused by the then existing alleged negligence of Newton and the city of Spirit Lake.

The order of the district court is affirmed. Costs to respondent.

McFADDEN, C. J., and DONALDSON, JJ., concur.

BAKES, Justice, dissenting:

I cannot agree with the decision of the majority that the plaintiff's claim is barred by the 120 day notice provision of the Idaho Tort Claims Act, I.C. § 6–906. In the first place, the trial judge never based his dismissal as to the city upon that section. Rather, the trial court held that ". . .

the liability of the city is barred by the provisions of I.C. § 6–904, subsections (4) and (7)."[1]

I think it is unfortunate that the majority has disposed of this case on a legal issue which was not the basis for the district court's ruling. The Court should have addressed the issues that were presented to it, i. e., was this cause of action barred by I.C. § 6–904(4) and –(7).

However, the Court having chosen to base its decision upon the 120 day time period provided for in I.C. § 6–906, I do not believe that it can be said as a matter of law that the plaintiff Dana Ralphs can prove no set of facts in support of his claim which would entitle him to relief, and therefore a Rule 12(b)(6) dismissal is improper.

First, the complaint in this case alleges a claim against the chief of police and the city of Spirit Lake grounded in negligence. As to these defendants, there is no issue of a battery, or any intentional tort. The defendant police chief allegedly breached his duty to this plaintiff by failing to stop the criminal assault on the plaintiff on the 25th or 26th of May, 1974. The claim against the city was based upon negligence, both vicarious and independent. The "additional injuries" which were the basis of plaintiff's complaint were not discovered until August 10, 1975.

While the victim of an intentional tort has a right of action for nominal damages from the time of the wrongful act, this is not the case in negligence actions. Professor Prosser states that a necessary element to a cause of action for negligence is

"[a]ctual loss or damage resulting to the interests of another. Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no

1. He dismissed the action against the police officer for failure to file a bond as required by I.C. § 6–610, and as the majority correctly points out that issue is not before us on this appeal.

actual loss has occurred." Prosser, Law of Torts, 4th Ed. (1971), p. 143.

He then observes:

"It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred." *Id.*, at 144.

*See also* the discussion of the actual damage requirement in *United States v. Reid*, 251 F.2d 691 (5th Cir. 1958), cited by the majority and Justice Bistline. It is possible that this plaintiff did not sustain any injuries as would support an action in negligence on the date of the assault and battery, but that the injuries discovered on August 10, 1975, were the first indications that he had suffered actionable damages from the incident. If that were the case, I believe that he did not have a cause of action against the city or the chief of police until that date.

Even if the plaintiff had suffered some identifiable injuries on the date of the incident, I believe that it is possible that the 120 day notice of claim period for his cause of action against the city may not have commenced running on that date. The complaint does not reveal whether the plaintiff was aware that the chief of police was standing by and failing to act while he was being assaulted, and it is possible that he did not discover that the chief of police had been present until sometime later. If that were the case, he could not have known that he had a cause of action for the negligence of the chief of police or the city until that date. The language in I.C. § 6–906 which provides that the notice of claim must be filed ". . . within one hundred twenty (120) days from the date the claim arose *or reasonably should have been discovered, whichever is later*" applies to such a situation, and at the least requires a factual resolution of when the claim reasonably could have been discovered. In *Independent School Dist. of Boise City v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975), this Court held that while the notice period was not tolled for infancy or incapacity, those conditions could be factors in the determination of when the claim reasonably could have been discovered, and that this language "requires a resolution of fact for the court below." 539 P.2d at 991. I would hold that the possibility of the plaintiff's lack of knowledge that the sheriff had been present also requires a resolution of fact for the court below.

I agree with Justice Bistline that I.C. § 6–906 and § 6–907, which set forth when the 120 day notice of claim period begins to run and what information must be included in the notice, appear to establish a different kind of standard than that governing when the statute of limitations begins to run for personal injury claims against private individuals. *Cf.* I.C. § 5–219(4). The legislature has specifically rejected the discovery rule for the running of the statute of limitations in most personal injury actions under I.C. § 5–219(4), but it has clearly adopted a discovery rule in I.C. § 6–906 for claims against a political subdivision. Also, since this Court held in *Callister* that the 120 day notice of claim period was not a statute of limitations, an opinion in which I did not join, it should not feel constrained to apply statute of limitations rules regarding when the notice of claim period begins to run.

Finally, I believe that this issue should not be disposed of under a Rule 12(b)(6) motion to dismiss, but should be raised in the answer as required under Rule 8 for the reasons stated in my specially concurring opinion in *Dumas v. Ropp*, 98 Idaho ——, 558 P.2d 632 (1977), and my dissenting opinion in *Myers v. City of Pocatello*, 98 Idaho ——, 559 P.2d 1136 (1977). *See also Singleton v. Foster*, 98 Idaho ——, 559 P.2d 765 (1977); *Duff v. Draper*, 96 Idaho 299, 527 P.2d 1257 (1974).

BISTLINE, Justice, dissenting.

Appellant's action here is predicated on the negligence of the City in employing Newton, with the contention that Newton's known propensities at the time of his hiring, as evidenced later, in fact resulted in the physical battery on appellant's person, which would not have occurred except for the further negligence of Newton in dis-

charging his duty as a police officer, allegedly implied to the City.

While appellant's complaint does allege that the battery occurred on May 25, 1974, it is equally true that appellant did not plead any injuries which were on that same date observed as resulting therefrom. By alleging *"additional* injuries" which were discovered later, as appellant did, he has created a situation where a permissible inference might be drawn that there *may* have been some immediate injuries coincident with the physical assault, making it possible that he may have from day one had a "claim" under the act. But, it is equally permissible to draw another inference that such were the usual external minor bruises and contusions attendant to any physical trauma, entirely lacking in sufficiency so as to precipitate appellant into thinking in terms of a lawsuit, and, perhaps entirely insufficient as to be capable of description. It is not every injury which results in a truly actionable claim; significant and serious injuries will often be revealed only by the passage of time. On a defendant's motion for dismissal of the complaint, as the majority opinion points out, any inferences to be drawn are viewed favorably from a plaintiff's standpoint.

The majority opinion speaks of there being a wrongful act when there is a coincidence of negligent act and the occurrence of *damages.* This language causes me serious concern. I am not unmindful that in textbook tort law a cause of action, I.C. § 5–605(2), or a claim for relief, I.R.C.P. 8(a), is said to arise when there is a wrongful act even when there are *no* resultant injuries, but nominal damages may yet be recovered.[1] This is not our concern. Rather here we examine the complaint in light of the word "claim" as used in the Idaho Tort Claims Act. Where the statutory requirement of a claim for a personal injury under this act is that there be set forth "the conduct and circumstances which brought about the injury" and a description of "the injury," I.C. § 6–907, it necessarily follows that no personal injury claim arises under the act unless an injury results from the wrongful act. In this respect the hornbook definition of a *cause of action* or claim for relief taught to the first-year law student is a thing separate and apart from a *claim* under the Act. And this is as it should be. The act does not contemplate the making or allowance of claims where there is no injury, nor does it encourage claims where the injury is minimal, and the cause of action falls into the category of *de minimis.*

The rationale adopted by the majority misses the very distinction which I point out, holding that there was a "coincidence of a negligent act and the occurrence of *damages*"—hence a "wrongful act" on the very date that he was "battered and beaten." This would be true as to the *ordinary cause of action,* or claim for relief, simply because nominal damages will be presumed and awarded for the type of conduct alleged. This same approach causes the majority opinion to go on to say: "Therefore the applicable statutes begin to run from the occurrence of the wrongful act albeit the full extent of the *damages* may be unknown or unpredictable at that initial time."

In a personal injury situation, the correct terminology is *injuries,* not damages, and this distinction is not a matter of nicety, but critical under the wording of the Act.

The majority errs in equating "claim" with "wrongful act"—which is done by the use of the attendant phrase "occurrence of *damages.*" Where a "wrongful act" is against the person and results in slight or even no physical injury, the majority would conclude that a "claim" inevitably arises and must be said to be discovered even though the requisite resulting injury remains to be discovered. This approach emasculates the distinction carefully drawn by the statute. I.C. § 6–906 speaks of the presentation of a claim for money damages within 120 days of the date when the *"claim*

---

1. I am in agreement with Justice Bakes' opinion wherein he points out that nominal damages are a matter of consideration in wilful or intentional torts—not in actions grounded only in negligence.

arose *or reasonably should have been discovered, whichever is later."* I say only that while a personal injury claim may most often arise on the date of the wrongful act, the date on which it is in actuality discovered, or, "reasonably should have been discovered," may come much later in time. The statute clearly leaves this open as a question of fact. And it should. The 120-day period of time is short enough without this Court precluding a wronged victim from the opportunity of establishing when in point of time he discovered his internal injuries.

Since the statute requires such a victim to make a claim within 120 days, what, then, is a proper criterion upon which to say that the 120-day time period begins running, where the only positive date is the date of the wrongful act? In my opinion a reasonable basis is to be found in the factual difference between cases of unobserved or *de minimis* initial physical injuries with later developing serious and significant physical injuries, and cases of serious injuries at the outset. The majority forecloses any consideration that there may exist these two distinct situations, and precludes the readily discernible distinction between easily observable external injuries, on the one hand, and internal injuries, on the other.

*Little v. Emmett Irr. Dist.,* cited in the majority, though not directly in point, because it is a statute of limitations situation rather than a "prerequisite" to bringing action, is supportive of the proposition that there is not even a cause of action or claim for relief, where there is no remedy. Otherwise put, *Little* holds that a cause of action only arises so as to start the running of a statute of limitations where there is a remedy. Even stronger argument for observing the distinction which I point out is that the Idaho Tort Claims Act simply does not recognize any remedy in a person who is wronged, but not injured. Only at the point that he discovers his injuries, *and describes them,* or should be charged with reasonably discovering them, can he make a claim which the governmental entity can entertain under the Act. His cause of action, or claim for relief, arises only when his "claim" is denied or deemed denied.

Neither party has brought to our attention any case involving a statute such as is involved here wherein is spelled out exactly what must be the contents of a "claim" under the Idaho Tort Claims Act. Respondent urges, and the majority relies upon, *Beech v. United States. Beech,* of course, is an action brought under the Federal Tort Claims Act, § 2674, 28 U.S.C.A. This Act does not contain any provision mandating the filing of a "claim" as does Idaho's near counterpart, nor does it purport to set forth the required contents of a claim. In all respects, under the FTCA, the claim therein referred to is what we generally know as a claim for relief, or a cause of action.

In *Beech* the court of appeals first noted that the statute barred a tort claim "unless action is begun within two years after such claim accrues," and then questioned itself:

"When did the appellants' cause of action accrue? The date of the fall—June 15, 1960—is the critical date. Where the trauma coincides with the negligent act *and some damage is discernible at the time,* the two-year statute of limitations begins to run, even though the ultimate damage is unknown or unpredictable. *Tinkoff v. United States* (7 Cir.), 211 F.2d 890; *Keleket X-Ray Corporation v. United States* (1960), 107 U.S.App.D.C. 138, 275 F.2d 167. See also Restatement, Torts, § 899, page 525. As this Court said in the *Reid* case, *United States v. Reid,* 5 Cir., 251 F.2d 691, 694:

'*Ordinarily* there is a coincidence of negligent act and the fact of some damage. Where that occurs the cause of action comes into being and the applicable statute of limitations beings [sic] to run even though the ultimate damage is unknown or unpredictable.'

The fall and alleged negligent conduct occurred on June 15, 1960. This suit was not commenced until February 28, 1963—more than 2½ years later. That action is barred and to that extent the judgment of the District Court is affirmed." (My

emphasis.) *Beech v. United States*, 345 F.2d 872, 874 (5th Cir. 1965).

*Beech* was concerned not with whether or not there was a claim as identified within the ITCA, but as to the time a cause of action or claim for relief had accrued. The facts of *that* case show Mrs. Beech, who fell in a government hospital, being x-rayed there the same day, given medicine for her pain, requested to return the next day, further examined, and placed in hip and leg traction at the hospital for eleven days. She continued to worsen, and in the spring of 1962, further examinations and x-rays resulted in her being told that she had incurred an aseptic necrosis of the head of the left femur, and advised that nothing could be done to improve her condition. It is doubted that anyone would question the court's holding that she had some discernible injuries on the date she fell, or at least the next day when she was hospitalized for eleven days, and continually had increased complaints.

In the *Reid* case, quoted in *Beech*, the appellant's action had been dismissed for having not been brought within two years of the wrongful (negligence in that case) act. On the first appeal, by appellant, it was contended that "the cause of action did not arise until the injury made itself manifest to him, and this was not until well within the two year period." The cause was reversed, the court saying that the limitation issue should not have been decided on a motion, and the cause was remanded "for trial on its merits, in which all questions of liability and limitation will be open for trial anew."

Reid prevailed at the trial, and the United States appealed. The circuit court made the statement above quoted in the quotation from *Beech*, and went on to say: "But it is not the wrongful, i. e., negligent act, which gives rise to the claim. For there must be damage caused by it. Until there is *some* damage, there is no claim and certainly a statute prescribing the time in which suit must be filed (whether as a condition of right or remedy) can never operate prior to the time a suit would be permitted. 34 Am.Jur. Limitation of Action, §§ 160, 161; 11 A.L.R.2d 279; 74 A.L.R. 1317, 1319; 144 A.L.R. 209, 210." (My emphasis.) *United States v. Reid*, 251 F.2d 691, 694 (5th Cir. 1958).

I submit that if the foregoing be true with regard to a cause of action or claim for relief, which I think ought not be denied, it is even more appropriate when the question before the Court is the accrual of a claim as defined by the ITCA. It is important to keep firmly in mind that we do not here deal with the ordinary tort action.

Respondent City in its brief brings our attention to a rule stated at page 1234 of 90 A.L.R.2d, dealing with accrual of battery actions and applicable limitations statutes. The writer of the annotation states, however, on page 1232, under scope of the annotation, that specifically excluded therefrom is any consideration of " 'notice-of-claim' statutes, enacted chiefly for the benefit of governmental subdivisions or public authorities which may be defendants in tort actions . . .. Thus, also excluded herefrom are assault and battery actions arising under such statutes."

Note also that the annotation upon which respondent relies contains this message: "Even where the unlawful contact with plaintiff's person has not resulted in measurable bodily harm, the law regards the affront to his dignity as a legal injury for which it affords redress." There is nothing in the ITCA which manifests even the slightest intent on the part of the legislature to waive sovereign immunity so as to allow claims, and then suits, for wounded dignity. When the matter at hand is waiver of sovereign immunity, albeit in a most limited fashion, and a notice-of-claim must be timely made as a prerequisite to suit, *Independent School District of Boise City v. Callister, supra*, the Act neither envisions nor allows claims for negligence without injury.

Respondent City also brings to our attention two outstanding and well-reasoned cases from the California Supreme Court, in bank, one of which respondent cites, and

the other which is discovered by reading the one cited. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal. Rptr. 837, 491 P.2d 421 (1971), by a unanimous court, concerned the accrual of a negligence action against an attorney who let his client's action slide away into oblivion by non-action. The client learned of this only after the applicable two-year statutes of limitation had run their course. Overruling a long string of prior contrary holdings, the California Supreme Court said this, which respondent provided us:

> "*In ordinary tort and contract actions,* the statute of limitations, it is true, begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or of the identity of the wrongdoer, does not toll the statute. In cases of professional malpractice, however, postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional man and his client." (Emphasis added.) *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 98 Cal.Rptr. 837, 844, 491 P.2d 421, 428.

The words above are given emphasis because I believe to have now made it clear that an action especially allowed by the ITCA, with its attendant restrictions and demands, is a far cry from the *ordinary tort action,* and is, in fact, as with professional malpractice cases, out of the ordinary.

More controlling here than *Neel,* however, is the companion case of *Budd v. Nixen,* immediately following *Neel* at page 195 of 6 Cal.3d, at page 849 of 98 Cal.Rptr., at page 433 of 491 P.2d, handed down at the same time. The court, again unanimous, was concerned with another legal malpractice action; again the issue was the application of the limitations statutes, and the critical factor was the time of accrual of the negligence action with regard to the element of damages. The court said this:

> "*If the allegedly negligent conduct does not cause damage, it generates no cause of action* in tort. (See Developments in the Law—Statute of Limitations (1950)

63 Harv.L.Rev. 1177, 1201.) The mere breach of a professional duty, *causing only nominal damages,* speculative harm, or the threat of future harm—not yet realized—*does not suffice to create a cause of action for negligence.* (*Walker v. Pacific Indemnity Co.* (1960) 183 Cal. App.2d 513, 517, 6 Cal.Rptr. 924; *McGregor v. Wright* (1931) 117 Cal.App. 186, 196–198, 3 P.2d 624.) Hence, until the client *suffers appreciable harm* as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.' (Prosser, Law of Torts (4th ed. 1971), § 30 at p. 144.)

> "The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. (See *Sonbergh v. MacQuarrie* (1952) 112 Cal. App.2d 771, 773, 247 P.2d 133; *Wood v. Currey* (1881) 57 Cal. 208, 210.) *Any appreciable and actual harm* flowing from the attorney's negligent conduct *establishes a cause of action upon which the client may sue.*

> "Indeed, once having discovered his attorney's negligence *and having suffered some damage, the client must institute his action within the time prescribed* in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct. (*See* Code Civ.Proc. § 312; *Maguire v. Hibernia Savings & Loan Soc.* (1944) 23 Cal.2d 719, 733–736, 146 P.2d 673.) Ordinarily the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* [6 Cal.3d 176,] 98 Cal.Rptr. pp. 837, 844, 491 P.2d pp. 421, 428.

> "In other cases, *the infliction of the damage will alert the client* to the attorney's negligence *and thus the statute of limitations* will then begin to run on any mal-

practice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage.

"In the instant case, the facts may demonstrate that plaintiff suffered damage when, as he alleges in his complaint, he was compelled to 'incur and pay attorney's fees and legal costs and expenditures.'

\* \* \* \* \* \*

In any event, *the determination of the time when plaintiff suffered damage raises a question of fact.* In some cases a court could conclude as a matter of law that no triable issue of fact arises as to when a client would have suffered such damage that he would have a cause of action for his attorney's negligence. (See, e. g., *Yandell v. Baker* (1968) 258 Cal.App.2d 308, 311–312, 65 Cal.Rptr. 606.) In other cases only the trier of fact can ascertain when the damage was sufficient to trigger the plaintiff's cause of action. (See *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 255, 73 Cal. Rptr. 127.)

"In the present case, the factual issue as to accrual of damage was not resolved. . . . *Yet we hold today that the cause of action in tort does not accrue until the client both sustains damage, and discovers, or should discover, his cause of action.* . . . The proper answer to the question when plaintiff sustained actual damage before the filing of plaintiff's suit must await either a trial of the cause or a motion for summary judgment with declarations and points and authorities directed to that issue." (Emphasis added.) *Budd v. Nixen*, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436.

Appellant's complaint raises crucial questions of fact. First, what was the extent of appellant's initial physical injuries? Second, were they appreciable to the extent that a person of ordinary sensibilities would entertain the thought that he should pursue the matter? Third, when did appellant discover the full extent of his injuries?

Fourth, when should appellant reasonably have discovered the full extent of his physical injuries? Fifth, did appellant file his claim within 120 days of the date on which his claim arose or reasonably should have been discovered, whichever was later? For all that appears from the complaint in this case, appellant's situation is that of an individual whose severe, actionable injuries were internal and showed only some fifteen months after, but nevertheless as a proximate result of the wrongful act.

The majority of this Court said just the other day that it is a matter of "proof on the question of whether or not plaintiff's claim should 'reasonably have been discovered' within a time framework activating the requirements of the statutory notice of claim requirement." *Independent School District of Boise City v. Callister*, 97 Idaho 59, 539 P.2d 987, 991, (1975). If that holding has continuing validity, it certainly has application here.

Unanswered questions of fact should be resolved. On the bare allegations of the complaint in this case, I do not think it appropriate for this Court to hold that no question of fact exists, thereby depriving the appellant of his day in court.

Appellant raises a further question as to the validity of the 120 days' time limitation, which question I feel should be met. This Court in *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975), declared itself not persuaded by authority from Michigan and Nevada, but relied heavily upon language in *Cook v. State*, 83 Wash.2d 599, 521 P.2d 725 (1974); but this language was disapproved as dicta and expressly rejected by a majority of the Washington Supreme Court in *Hunter v. North Mason High School*, 85 Wash.2d 810, 539 P.2d 845 (1975). I feel, therefore, this Court should reconsider *Newlan*. Our recent decision in *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), which adopts a new standard of review in equal protection cases, also suggests the need for a current reevaluation of the *Newlan* case, which was, after all, an equal protection case.