Stanley A. RUDGINSKI and Sieglinde P. Rudginski, Plaintiffs-Intervenors,

v.

Frank P. PULLELLA, Nicholas A. Baldini, and Chapel Builders, Inc., Plaintiffs-Third Party Defendants,

and

A & H Plumbing and Heating, Inc., Howard Stump and Alfred Stump t/a A & H Plumbing and Heating, Inc., Defendants-Third Party Defendants.

Superior Court of Delaware, Kent.

Submitted May 10, 1977.

Decided Sept. 6, 1977.

F. Michael Parkowski, Dover, for plaintiffs-intervenors.

George F. Gardner, III, of Schmittinger & Rodriguez, Dover, for plaintiffs-third party defendants.

Melvyn A. Woloshin, of Woloshin & Tenenbaum, Wilmington, for defendants-third party defendants.

CHRISTIE, Judge.

A & H Plumbing and Heating, Inc. (defendant and third party defendant) has moved to dismiss the complaint filed by Stanley A. Rodginski and Sieglinde P. Rodginski (intervening plaintiffs). The motion is based on the three year statute of limitations found in 10 *Del.C.* § 8106. It is undisputed that the cited statute is the statute

setting the time limit within which the claim here asserted may be brought. The dispute is as to the date upon which the action accrued and the statutory period started to run under the peculiar facts of this case.

The facts are essentially undisputed.

Intervenors entered into a contract with Chapel Bldrs., Inc. for the purchase of a house located on Lot # 19, Richardson Estates, Dover, Delaware. Chapel Bldrs., Inc., in turn, retained A & H Plumbing and Heating, Inc. to install the septic tank sewage disposal system and plumbing fixtures on the lot in question and on other lots. Intervenors, on August 9, 1972, took possession of the residence they had purchased and moved into the house.

In June of 1974, for the first time, intervenors experienced difficulty with their septic tank disposal system. At that time, the system overflowed and backed up into the washroom. Intervenors then contacted the Division of Environmental Control of the Delaware Department of Natural Resources and Environmental Control (DNREC), and they say that they were advised that the problem would be corrected through direct action against Chapel Bldrs., Inc. and A & H Plumbing and Heating, Inc.

The overflow problem reoccurred in December 1974. After that, intervenors began having the septic tank pumped at regular intervals.

DNREC proceeded to file criminal charges in the Justices of the Peace Court against Chapel Bldrs., Inc. and A & H Plumbing and Heating, Inc. In January 1975, DNREC conducted a public hearing to consider numerous septic tank disposal system problems in Richardson Estates. Thereafter, A & H Plumbing and Heating, Inc. "voluntarily" sought to find out what was wrong with intervenors' septic tank disposal system. Nothing effective was done, however, to correct the situation, and intervenors' septic system continued to become overloaded.

On January 29, 1975, Chapel Bldrs., Inc., and others filed a suit in the Superior Court against A & H Plumbing and Heating, Inc. (C.A. 88, 1975). Among the allegations of the complaint are allegations that A & H Plumbing and Heating, Inc.:

1. Installed under contractual arrangement a septic tank disposal system on the subject Lot # 19.
2. Installed said septic tank disposal system subject to regulations of DNREC regarding installation of septic tank sewage disposal systems.
3. Has been charged by DNREC with violations of Regulations 0208, 0518, 0804, 0803, 0811, of the DNREC regulations governing the installation of septic tank disposal systems—such charges relating to work performed on the subject Lot # 19.
4. Has been charged by DNREC with violations of a permit issued by DNREC for installation of a septic tank sewage disposal system on the subject Lot # 19.
5. Did not comply with regulations of DNREC and permit conditions regarding installation of a septic tank sewage disposal system on the subject Lot # 19.
6. Breached its contract with Chapel Bldrs., Inc., et al.
7. Has committed fraud by its violations of regulations and permit conditions regarding the installation of a septic tank sewage disposal system.
8. Has been negligent in causing numerous violations of regulations and permit conditions.

Thus, Chapel Bldrs., Inc., has filed a timely suit against A & H Plumbing and Heating, Inc., alleging breach of contract, fraud, and negligence, all in relation to the installation of septic tank sewage disposal systems including intervenors.

On December 24, 1975, intervenors filed a motion to intervene pursuant to Superior Court Civil Rule 24. On January 16, 1976, the motion was presented to the Court and was unopposed. The Court approved the motion to intervene and directed the origi-

nal parties to the litigation to respond to the pleadings of the intervenors. On January 21, 1976, intervenors served their complaint on Chapel Bldrs., Inc., as plaintiffs-third party defendants, and on A & H Plumbing and Heating, Inc., as defendants-third party defendants. An answer to intervenors' complaint has been filed by Chapel Bldrs., Inc., but A & H Plumbing and Heating, Inc., by appropriate motion, seeks to have intervenors' complaint dismissed.

The pleadings filed by intervenors assert causes of action based on breach of contract and negligence, all in reference to the installation of a septic tank sewage disposal system which was already the subject of the pending litigation.

■ As noted previously, the pertinent statute of limitations is found in 10 *Del.C.* § 8106 which states in part ". . . no action to recover damages caused by an injury unaccompanied by force . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . ." Limitation statutes such as § 8106 are generally known as "accrual" statutes of limitation. *Nardo v. Guido DeAscanis & Sons, Inc.,* Del.Super., 254 A.2d 254 (1969). This type of statute has usually been interpreted so that the cause of action is deemed to have accrued at the time of the commission of the tort or the breach of the contract. *Bradford Inc. v. Travelers Indemnity Co.,* Del.Super., 301 A.2d 519 (1972); *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974). Traditionally, a plaintiff's cause of action accrues for limitation purposes at the time of injury or loss and the plaintiff's ignorance of the injury or loss does not toll the statute. This has been the general rule in Delaware. See *Mastellone v. Argo Oil Corp.,* Del.Supr., 7 Terry 102, 82 A.2d 379 (1951).

The harshness of this rule was ameliorated when the Delaware Supreme Court held that the cause of action did not accrue (that is, the injury was not deemed to have been "sustained") in a medical malpractice case until the plaintiff had discovered the alleged malpractice. *Layton v. Allen,* Del. Supr., 246 A.2d 794 (1968). The rule applied in that case is often referred to as the "time of discovery" rule.

In the *Layton* case, the Court noted ". . . it is unreasonable . . . to assume that the General Assembly intended to grant a remedy for a wrong but to bar the remedy before the wrong was physically ascertainable by due diligence." 246 A.2d at 797. The Supreme Court was careful, however, to limit its holding to medical malpractice cases and not to broadly relax the rule of ignorance as exemplified by *Mastellone.* The Supreme Court also distinguished between the statute there in question (10 *Del.C.* § 8118) and an accrual statute such as § 8106.

A more significant development took place when the Supreme Court further relaxed the rule six years later by holding that the statute of limitations did not run on an accounting error until an IRS investigation made the negligence discoverable. *Isaacson, Stolper & Co. v. Artisan's Savings Bank, supra.* Because of the "inherently unknowable" nature of the negligence, the Court adopted the "time of discovery" rule to this situation finding it analogous to the *Layton* malpractice case. In this case, however, the "time of discovery" rule was applied under the very accrual statute which is applicable in the case at bar. (10 *Del.C.* § 8106) The Supreme Court stressed the inherently unknowable injury suffered by one who was blamelessly ignorant of the act or omission complained of.[1]

---

1. The case of *Lembert v. Gilmore,* Del.Super., 312 A.2d 335 (1973) decided a year earlier is readily distinguishable. There a defendant surveyor was alleged to have negligently placed stakes at what purported to be the property lines. Although the negligent placement may not have been obvious, the stakes were in "plain view" and their existence and location were not concealed from the plaintiffs. Superi-

or Court in *Lembert* rejected the time of discovery concept, instead relying on the general rule that the statute of limitations begins to run on the date the cause of action accrues, the date of the injury. Compare *City of Newark v. Edward H. Richardson Assoc.,* Del.Super., 375 A.2d 475 (1977), where the allegation was that the engineering firm presented a defective plan calling for the use of unsuitable materials.

■ It must be kept in mind that the primary consideration underlying statutes of limitations is one of fairness to the defendant. "There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when evidence has been lost, memories have faded and witnesses have disappeared." Note, "Developments in the Law—Statute of Limitations," 63 *Harv.L.Rev.* 1177, 1185 (1950). Yet, in the application of the statute in a given set of circumstances, it should not be made to produce a result which the legislature as men and women of reason could never have intended. *Layton v. Allen, supra; Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). Thus, the question becomes one of balancing the difficulty of proof which may increase with the passing of time against the hardship to a plaintiff who neither knows nor had reason to have known, of the existence of his right to sue.

There has been a growing trend to adopt the "time of discovery" rule in medical malpractice cases. For a collection of these cases, see the annotation 80 A.L.R.2d 368, 388.

More importantly, for present purposes, has been the increasing use of the "time of discovery" rule in many different types of actions. For example, in an action involving improper design and construction, *Golden Grain Macaroni Co. v. Klefstad Engineering Co.,* 45 Ill.App.3d 77, 3 Ill.Dec. 610, 358 N.E.2d 1295 (1976); damages for water pollution, *Polzin v. National Co-op Refinery Association,* 175 Kan. 531, 266 P.2d 293 (1954); defective design, *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94 (1967); legal malpractice, *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971); negligent damage to real property, *Basque v. Yuk Lin Liau,* 50 Haw. 397, 441 P.2d 636 (1968); negligent damage to an underground sewer line, *Diamond v. N. J. Bell Telephone,* 51 N.J. 594, 242 A.2d 622 (1968).

In a recent legal malpractice case, Judge Caleb M. Wright of the District Court of Delaware examined 10 *Del.C.* § 8106 in light of the *Layton* and *Isaacson* cases. *Pioneer National Insurance Co. v. Sabo,* 432 F.Supp. 76 (D.Del.1977). As no Delaware case was precisely on point, he examined the general status of the law in the light of the Delaware cases to reach a conclusion which he believed to be consistent with Delaware law. Judge Wright concluded that the Delaware Courts would apply the time of discovery rule to determine when the cause of action had accrued under 10 *Del.C.* § 8106.

■ Reason and common sense dictate that the time of discovery rule be applied to this case. It would be harsh and unjust to hold that the cause of action accrued from the date of the allegedly negligent installation of the septic tank when there was no way to know that the buried negligence had taken place. Such an application could result in a ruling that the time to bring a cause of action had expired before the plaintiff was aware that anything was wrong or had any reason to be aware of the difficulty. I can find no reasonable distinction between the cases involving hidden malpractice of doctors, accountants and lawyers and the hidden errors of a plumber. Certainly, a negligently installed underground septic system which had not yet malfunctioned was no more likely to be found than a hidden act of malpractice.

I find the better rule and the rule to be applied here is that the cause of action did not accrue until the plaintiffs had notice that there was something wrong with the septic system or until, by the exercise of reasonable diligence and care, they could have discovered the defect. The statute of limitations does not bar the suit.

■ The intervenors will be permitted to intervene under the authority of Superior Court Civil Rule 24(b). This rule states in part ". . . (u)pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim

**650**

. . . and the main action have a question of law or fact in common . . ." Here the intervention will avoid a multiplicity of suits, it will dispose of the controversy existing between the parties, it will save the time of the Court and it will not prejudice the adjudication of the original parties. *United States v. Fidelity & Deposit Co. of Maryland,* 22 F.R.D. 248 (M.D.Pa.1958).

A & H Plumbing and Heating, Inc., has stressed the differences between the legal theories on which Chapel Bldrs., Inc. relies and the legal theories on which intervenors rely. It contends that the intervenors have brought a new cause of action and for this reason intervention should not be allowed. However, basic questions as to all of the litigation revolve around the allegations that an inadequate septic system was installed. There are unquestionably common issues of law and fact, and intervention is entirely appropriate.

It should be further observed that there may well be a sufficient community of interest between the suit of Chapel Bldrs., Inc. and the suit of the intervenors to support a ruling that the timely suit filed by Chapel Bldrs., Inc. inures to the benefit of the intervenors. 8 A.L.R.2d 90; *Duff v. Draper,* 96 Idaho 299, 527 P.2d 1257 (1974).

The motion to dismiss is denied. The case will be set down for trial on its merits.

IT IS SO ORDERED.