630 P.2d 685

**J. R. FARBER and Amelia V. Farber, husband and wife, Plaintiffs-Appellants,**

**v.**

**The STATE of Idaho, The City of Nampa, Asphalt Paving and Construction Co., Inc., a corporation, Defendants,**

**and**

**The State of Idaho, Defendant-Respondent.**

**ASPHALT PAVING AND CONSTRUC-TION CO., INC., a corporation, Cross–Plaintiff,**

**v.**

**The STATE of Idaho, Cross–Defendant.**

**No. 13212.**

Supreme Court of Idaho.

July 7, 1981.

Kenneth E. White, Nampa, for plaintiffs-appellants.

Warren E. Jones of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for respondent.

BISTLINE, Justice.

This case was previously before us in *Farber v. State*, 98 Idaho 928, 576 P.2d 209 (1978). A brief summary of the facts as set forth in that opinion is as follows: The action arises from the reconstruction of Twelfth Avenue South and Seventh Street South in Nampa, Idaho. Respondent State of Idaho entered into a cooperative agreement with defendant City of Nampa for the reconstruction project, and defendant Asphalt Paving and Construction Company was awarded the contract to perform the reconstruction work. Appellants, the Farbers, own a building and lot located at the intersection of Twelfth Avenue South and Seventh Street South, both of which were affected by the reconstruction work.

The Farbers filed suit against defendant-respondent State of Idaho and defendants City of Nampa and Asphalt Paving and Construction Company, alleging a right to recover damages, primarily for the negligent planning, construction and design of the project. The Farbers' amended complaint also sought to recover damages for the wrongful taking of a portion of their property.

A formal claim for damages against the defendant City of Nampa was filed on October 10, 1973, as provided by the Idaho Tort Claims Act (ITCA), I.C. § 6–901, et seq. A complaint against the state was filed on April 11, 1974. This complaint did not specifically refer to the ITCA. On June 11, 1974, the state moved to dismiss the action because of the Farbers' failure to file timely notice of the claim with the state under the ITCA. On August 12, 1974, prior to a hearing on the state's motion to dismiss, the Farbers filed a formal notice of claim with the state. They then filed an amended complaint, and the state again moved to dismiss for failure to comply with the ITCA. The district court granted the motion and dismissed with prejudice. The Farbers appealed that dismissal to this Court. In *Farber v. State, supra*, this Court dismissed the appeal because the lower court dismissal had not been certified as final pursuant to I.R.C.P. 54(b).

The Farbers subsequently filed in district court a motion to reconsider the granting of the state's motion to dismiss. This motion was denied and a final order of dismissal was entered pursuant to Rule 54(b). The order denying the motion to reconsider specifically provided:

"1. That Plaintiffs' Motion to Reconsider this Court's earlier Order Granting the State of Idaho's Motion to Dismiss is denied, except as hereafter set forth.

"2. That all claims by Plaintiffs against the State of Idaho based on tort or negligence contained in Plaintiffs' Amended Complaint in the above-entitled matter are hereby dismissed with prejudice on the ground and for the reason that Plaintiffs have failed to conform with the requirements of Idaho Code, Section 6–905, all as stated in this Court's earlier Order Granting Motion to Dismiss dated September 2, 1975.

"3. That any claims Plaintiffs may have against the State of Idaho for inverse condemnation shall be preserved and Plaintiffs may amend their Amended Complaint to allege a cause of action based on inverse condemnation against the State of Idaho."

The Farbers contend on appeal that the district court erred in concluding that their claim did not meet the notice requirements of the ITCA. The Farbers also argue that the district court's order improperly excludes claims for tort damages which are severe enough to constitute a taking. In light of our disposition of the first issue, we need not decide the effect of the court's

order on negligence claims arising out of any taking.

I.C. § 6–905 [1] provides:

"Filing claims against state or employee—Time. All claims against the state arising under the provisions of this act and all claims against an employee of the state for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the secretary of state within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later."

The Farbers contend that their claim did not "arise" within the meaning of I.C. § 6–905 until April 29, 1974, the date that construction on the project was completed and the project was approved by the state. Since the Farbers' notice was filed on August 12, 1974 (105 days after April 29), if the Farbers' contention as to the date their claim arose is correct, then they have fulfilled the notice requirements of the ITCA.

We have not previously addressed the question of when the 120 day notice requirement begins to run in cases of continuing torts involving damage to property. In support of their position that the 120 day provision begins to run from the time that the contract is approved by the state, the Farbers cite *Gillam v. City of Centralia*, 14 Wash.2d 523, 128 P.2d 661 (1942), which held that:

"[W]here a municipality, without condemnation proceedings, takes or damages private property for a public improvement, the statute of limitations does not commence to run against the property owner's right of action for compensation until construction of the improvement has been entirely completed or until operations thereon have ceased for such a period of time as reasonably to indicate that the project has been abandoned." 128 P.2d at 663.

Washington courts have steadfastly adhered to this rule. *See Vern J. Oja & Associates v. Washington Park Towers,*

*Inc.*, 89 Wash.2d 72, 569 P.2d 1141 (1977) (cause of action for damage to apartment building from use of pile-driver accrues upon completion of the project); *Papac v. City of Montesano*, 49 Wash.2d 484, 303 P.2d 654 (1956) (statute of limitations for damage to land runs from time project is completed, or substantial injury occurs, whichever is *later* ). *See also Shockley v. Public Service Co.*, 525 P.2d 1183 (Colo.App. 1974) (statute of limitations for cause of action arising out of public road improvement runs from time project is completed); *Ashmon v. City of Des Moines*, 209 Iowa 1247, 228 N.W. 316 (1929) (statute of limitations runs from time construction project is completed). As a policy reason for adopting their position, the Farbers suggest that they cannot know the full extent of their damages until the project is complete. They urge that this is particularly true where the state retains the right to require changes in the work prior to approval.

The state argues the general rule that "a cause of action arises or accrues . . . when the plaintiff could have first maintained the action to a successful conclusion," 51 Am. Jur.2d *Limitation of Actions* § 107 (1970), and that "[i]f an actual injury to real property occurs, suit must be brought within the period of limitation by the property owner not only for the actual injury that has occurred but also for any additional injuries which were foreseeable and estimable when the initial damage was suffered." 51 Am. Jur.2d *Limitation of Actions* § 121 (1970). The state then argues that since the Farbers filed a claim against the City of Nampa on October 10, 1973, and since that claim specified damages nearly identical to the damages claimed in their April 11, 1974 complaint against the state, the Farbers could have maintained a suit against the state as early as October of 1973.

In *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977), this Court examined a similar issue arising out of a personal injury case. The plaintiff there had been

---

1. I.C. § 6–905 was amended in 1976, after the Farbers initiated this action. The amendments are not relevant, however, to the Farbers' contentions.

attacked and injured in May of 1974. He filed a notice of claim against the city under I.C. § 6–906 in November of 1975, claiming that he had recently discovered additional damages from the attack. The holding in that case was that "[w]here there is a coincidence of a negligent act and the occurrence of damages a 'wrongful act' has been committed for which a legal remedy in damages is generally available. Therefore the applicable statutes begin to run from the occurrence of the wrongful act albeit the full extent of the damages may be unknown or unpredictable at that initial time." 98 Idaho at 227, 560 P.2d at 1317. *Ralphs* would appear to be dispositive of the issue presented by the Farbers, unless there are compelling reasons for distinguishing the circumstances in *Ralphs* from the circumstances here. We see that there are.

In *Ralphs*, a single act caused the damage for which compensation was claimed. While the *damages* alleged were continuing, and their full extent unknown, the *act* complained of was completed, and *some* damages had apparently occurred, long before the notice of claim was filed. Here, the act complained of is in the nature of a continuing tort. While the damages complained of have occurred over a period of time, as in *Ralphs*, we feel that it is better policy to focus upon the *act* complained of, rather than the damages, in determining when the 120 day notice requirement of the ITCA is triggered. Thus the holding in *Ralphs* that "[w]here there is a coincidence of a negligent act and the occurrence of damages a 'wrongful act' has been committed" is not determinative of whether a "negligent act" should be defined as the first step in a continuing project, or as the project as a completed whole.

In interpreting the meaning of the word "act" in I.C. § 6–905, it must be remembered that the 120 day notice provision of I.C. § 6–905 is not itself a statute of limitation. A separate section of the ITCA provides for limitation of actions under the Act. *See* I.C. § 6–911; *Independent School District v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975). Thus, while rules of construction governing statutes of limitations may prove instructive, they are not determinative of our construction of I.C. § 6–905. To the extent that cases dealing with accrual of causes of action for purposes of a statute of limitations are applicable, we find the reasoning of the Washington court in *Gillam v. City of Centralia, supra*, and its progeny to be persuasive.[2]

Our conclusion is founded upon the legislative intent behind the notice requirement and several important policy considerations. The purposes of I.C. § 6–905 are to (1) save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties, (2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and (3) allow the state to prepare defenses. *See Newlan v. State*, 96 Idaho 711, 716–17, 535 P.2d 1348, 1353–54 (1975); *Jorstad v. City of Lewiston*, 93 Idaho 122, 125, 456 P.2d 766, 769 (1969). Unless the contract and all of the acts performed pursuant to the contract have been completed, it would be difficult for the state to determine the nature or extent of its liability or prepare a defense to any claim. Furthermore, if parties can present the state with a complete and definite claim for damages arising from the continuing tort, then the state may attempt a settlement on the basis of clearly ascertainable facts. If we were to adopt a contrary view,

---

2. I.C. § 5–241 states that:

"Actions [arising out of the design or construction of improvements to real property] will be deemed to have accrued and the statute of limitations shall begin to run ... as follows:

"(a) Tort actions ... shall accrue ... six (6) years after the *final completion* of construction ....

"(b) Contract actions shall accrue and the applicable limitation statute shall begin to run at the time of *final completion* of construction of such an improvement." (Emphasis added). Our legislature has thus expressed the same general approach to determining when a cause of action accrues for damages arising out of a construction project as the court in *Gillam*.

settlements would either be based on pre-completion, speculative damages, or would have to await the completion of the project.[3] A strict or literal interpretation of the notice requirements of the ITCA would result in denying the legitimate claims of those who have suffered injury at the hands of the state, without furthering in the least the legislative purposes behind the statute.

Independent policy considerations dictate a similar result. First, the need for certainty, and the resulting increase in efficiency of administration, suggests that interpreting the Act to provide clearly ascertainable dates from which the notice requirement will run is a desirable approach. In the case of damages arising from action taken pursuant to a contract with the state, the date that the state approves the work and accepts the contract provides an easily discernible point from which to gauge compliance with the time limits of the notice requirement.[4]

■ Secondly, our interpretation of I.C. § 6–905, as it applies to continuing torts arising out of projects for which the state contracts, is consistent with our announced policy of liberally construing statutes "with a view to accomplishing their aims and purposes, and attaining substantial justice," *Keenan v. Price*, 68 Idaho 423, 438, 195 P.2d 662, 670 (1948), and our generally liberal approach to interpreting the notice requirement of the ITCA. *See, e. g., Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978) (literal compliance with notice requirements not mandatory, actual notice will suffice). Other jurisdictions similarly take a liberal approach to interpreting notice requirements. *See, e. g., Grams v. Independent School District*, 286 Minn. 481, 176 N.W.2d 536, 541 (1970); *Brown v. City*

*of Chattanooga*, 180 Tenn. 284, 174 S.W.2d 466, 468 (1943). *See generally*, P. Corboy, Shielding the Plaintiff's Achilles' Heel: Tort Claim Notices to Governmental Entities, 28 DePaul L.R. 609, 613–15 (1979). In short, we believe that in applying I.C. § 6–905 to cases of continuing torts caused by projects undertaken pursuant to a contract with the state, the date upon which the project is approved and the contract accepted by the state is the time when the "act" referred to in I.C. § 6–905 is complete, and the 120 days available for giving notice of a claim begins to run. The Farbers filed their notice within this time period.

The summary judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

BAKES, C. J., and DONALDSON, J., concur.

McFADDEN, Justice, dissenting.

The majority recognizes the applicability of *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977), where it is stated:

"Where there is a coincidence of a negligent act and the occurrence of damages a 'wrongful act' has been committed for which a legal remedy in damages is generally available. Therefore the applicable statutes begin to run from the occurrence of the wrongful act albeit the full extent of the damages may be unknown or unpredictable at that initial time." 98 Idaho at 227, 560 P.2d at 1317.

The majority also notes that *Ralphs* would appear to be dispositive of the issue presented by appellants absent "compelling reasons" for distinguishing the circumstances of the two cases.[1] I fail to see such reasons.

---

3. We do not suggest that it would be *improper* to file an ITCA notice of claim prior to completion of a project. We simply address the question of the last possible day upon which a notice meeting the requirements of the Act must be filed.

4. We are fully aware that other noncontract activities undertaken by the state may occur over a long period of time and thus constitute a

"continuing tort," but without a definite date of completion to trigger the running of the notice period. We do not address the question of when the notice period begins to run in these noncontract continuing tort cases.

1. One of these "compelling reasons" appears to be based on the argument that damages or the extent of liability may be difficult to determine in the case of a "continuing" tort. Here, how-

The statutory scheme established by the Idaho Tort Claims Act requires that all claims against the state, *i. e.*, written demands to recover money from the governmental entity, I.C. § 6–902(7), shall be presented to and filed with the secretary of state within 120 days from the date the claim arose or reasonably should have been discovered. I.C. § 6–905. This provides the state time in which to analyze the claim and determine whether to allow or deny the claim. I.C. § 6–909. No action is allowed on the claim unless it has first been properly presented and filed and denied by the governmental entity involved. I.C. §§ 6–908, 910. We have expressly held that the notice of claim requirement of the ITCA embodied in the above sections is mandatory and in the nature of a condition precedent to the maintenance of a tort action against the state or governmental subdivision. *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978); *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975), appeal dismissed sub nom. *Agost v. Idaho*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975).

Appellants filed such a notice of claim against the city of Nampa on October 10, 1973, and at that time were apparently aware of the state's potential liability. This awareness is reflected by the fact that a letter of complaint, though not of notice of claim, dated August 21, 1973, was delivered to the state Department of Transportation, Division of Highways, some two months prior to the filing of notice of claim against the city. This letter, the record indicates, was followed by a meeting and a detailed written response from the state. Moreover, appellants filed, on April 11, 1974, an action sounding in tort against the state as well as the city. Thus the record reflects that appellant's claim against the state, which under *Ralphs* requires but the occurrence of a wrongful act together with damage, was probably known as of August or October, 1973; at any rate, it was necessarily and certainly known prior to the filing of the

suit against the state and others in April, 1974.

Even assuming that knowledge of the claim against the state was not had by appellants until shortly before the filing of the April action, notice of the claim, as required by the act, was not filed until over 120 days had passed. Not only was the time limit for providing notice of claims not met, the statutory scheme providing for prelitigation notice and allowance or denial of claims was frustrated. As we noted in *Newlan, supra*, 96 Idaho at 716, 535 P.2d at 1353, the language of the ITCA, that no claim or action shall be allowed unless the claim has been presented and filed within the time limits and in the manner prescribed by the act, is clear and unambiguous and without such compliance the suit cannot be maintained. I believe dismissal of the action was proper.

SHEPARD, J., concurs.

---

ever, the nature of the liability and the amount of damages were specified in the claim filed against the city in October, 1973. These injuries, and the amount of damages claimed therefor, reappeared in virtually identical form in the notice of claim against the state filed in August, 1974, as well as in the complaint filed in April, 1974, and later amended.