942 P.2d 544

**Lea MITCHELL and Mark Mitchell,
Plaintiffs–Appellants,**

v.

**BINGHAM MEMORIAL HOSPITAL,
Defendant–Respondent.**

No. 23110.

Supreme Court of Idaho,
Twin Falls, March 1997 Term.

July 16, 1997.

Lowell N. Hawkes, Chtd., Pocatello, for appellants. Lowell N. Hawkes, argued, Pocatello.

Tolman Law Office, Twin Falls, for respondent. Jennifer K. Brizee, argued, Twin Falls.

SILAK, Justice.

This is a hospital nursing malpractice case. The nature of the appeal involves the issue of whether the district court properly dismissed appellants' complaint for failure to comply with the notice requirements of the Idaho Tort Claims Act. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Appellant Lea Mitchell (Mrs. Mitchell) delivered healthy twin boys at Respondent Bingham Memorial Hospital (the hospital) on July 20, 1992. Because of a concern for toxemia she was placed on magnesium sulfate which was administered through an IV catheter. Later on July 20, 1992, Mrs. Mitchell was overdosed with the magnesium sulfate. The overdose resulted in respiratory arrest necessitating emergency "code blue" resuscitation procedures followed by the transfer of Mrs. Mitchell to the Intensive Care Unit of the hospital where she remained until discharged on July 23, 1992.

The Mitchells were initially told by hospital personnel that the overdose was a result of the malfunction or defect in the medication infusion machine. Two months later, Mrs. Mitchell's doctor told the Mitchells that the machine had been checked out by the factory and was not defective, and that the overdose was a result of the nurse's error, probably in pushing the "flush" switch on the machine which would have triggered the overdose.

Thereafter, the hospital repeatedly billed the Mitchells for the ICU expenses. The Mitchells retained counsel when the hospital credit manager threatened to sue them for the bill. According to the Mitchells' counsel, Lowell Hawkes (Hawkes), he spoke with the hospital administrator, Robert Peterson (Peterson), about the Mitchells' claim on January 8th and 13th, 1993, and met with him on January 20, 1993, a date chosen by Peterson. Hawkes stated in his affidavit that at the January 20, 1993 meeting, he furnished copies of the documents that identified the Mitchells, the hospitalization and charges at issue, and their damages as known at that time. He also stated that Peterson acknowledged liability for the nursing overdose and the error of the hospital in compounding the problem by making collection demands. Peterson allegedly offered to pay all of Mrs. Mitchell's additional medical bills resulting from the overdose, and Hawkes' legal fees to a certain limit. Hawkes also stated that Peterson gave him the name of the hospital's insurance agent, and that he met with the agent for a settlement conference on April 15, 1993. The hospital offered to settle the case for $5,000 in June 1993, which according to Hawkes was not accepted because the Mitchells had not fully ascertained their damages. Hawkes stated that he and the insurance agent discussed the case over a period of many months in 1993, and that he provided the insurance agent with updated information relative to the damages. Hawkes stated that the agent raised the notice of tort claim issue for the first time on April 18, 1994.

In a supplemental affidavit, Hawkes stated that in his phone conversation with Peterson on January 13, 1993, settlement of the claim was discussed, and that Peterson confirmed an interest in resolving the claim informally and without publicity. Hawkes also stated that in this conversation, Peterson "made the promise of acknowledging the hospital's error and a good faith follow-up meeting in giving me the January 20th date to meet."

In his second supplemental affidavit, Peterson acknowledged that he had a conversation with Hawkes on January 20, 1993, but that he did not consider this conversation to be a presentation of a claim for specific damages against the hospital. Peterson further acknowledged that he knew Mrs. Mitchell had had an overdose and that she would not have been in the ICU except for the overdose. He stated that he and Hawkes discussed the hospital's position in pursuing the ICU charges. However, Peterson denied having ever told Hawkes to withhold filing a notice of tort claim. In July 1994, the Mitchells filed a Prelitigation Hearing Panel Request with the State Board of Medicine. According to Hawkes, during those proceedings the hospital admitted that the overdose took place and only disputed the extent of Mrs. Mitchell's damages.

The Mitchells filed their complaint on February 1, 1995. In June 1995, the hospital filed a motion to dismiss claiming that the Mitchells did not file a timely notice of tort claim. The district court treated the motion as one for summary judgment and granted it, ruling that the Mitchells had not complied with the notice requirements of the Idaho Tort Claims Act (ITCA) and that the hospital had not waived the right to assert this defense. The Mitchells thereafter filed a motion for reconsideration which the district court denied. The Mitchells appeal.

## II.

## ISSUES ON APPEAL

1. Whether the 180 day notice requirement under the ITCA, I.C. § 6–906, began to run on the date of Mrs. Mitchell's overdose, or on the date the Mitchells were told that the overdose was due to nursing error.

2. Whether the phone conversations on January 8 and 13, 1993, between the Mitchell's attorney and the hospital administrator, constituted oral notice under I.C. § 6–906; and whether the documentation submitted by the Mitchell's attorney to the hospital administrator on January 20, 1993, constituted written notice under I.C. § 6–906.

3. Whether the medical malpractice prelitigation statutes preempt application of the ITCA to the county hospital in this case.

## III.

## STANDARD OF REVIEW

■ Because the construction and application of a legislative act present pure questions of law, this Court reviews such questions freely. *Fox v. State*, 129 Idaho 881, 883, 934 P.2d 947, 949 (Ct.App.1997); *State v. Browning*, 123 Idaho 748, 749, 852 P.2d 500, 501 (Ct.App.1993).

On an appeal from a summary judgment order, this Court applies the same standard of review as that used by the district court when originally ruling on the motion. *Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994). Upon review, the Court must liberally construe facts in the existing record in favor of the nonmoving party, and draw all reasonable inferences from the record in favor of the nonmoving party. *Avila*, 126 Idaho at 747, 890 P.2d at 333; *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment is appropriate " 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (quoting I.R.C.P. 56(c)). If there are conflicting inferences contained in the record or reasonable minds might reach different conclusions, summary judgment must be denied. *Bonz*, 119 Idaho at 541, 808 P.2d at 878.

## IV.

## ANALYSIS

**A. The 180–Day Notice Requirement Under The ITCA Began To Run On The Date Of Mrs. Mitchell's Overdose, July 20, 1992.**

Preliminarily, we note that the ITCA does apply to Bingham Memorial Hospital. The

ITCA, I.C. § 6–901, *et seq.*, governs tort claims against governmental entities. I.C. § 6–902(3) defines "governmental entity" to include the state and political subdivisions. "Political subdivision" is defined as follows:

[A]ny county, city, municipal corporation, health district, school district, irrigation district, special improvement or taxing district, or any other political subdivision or public corporation. As used in this act, *the terms "county" and "city" also mean state licensed hospitals and attached nursing homes established by counties pursuant to title 31, chapter 36, Idaho Code,* or jointly by cities and counties pursuant to title 31, chapter 37, Idaho Code.

I.C. § 6–902(2) (1990). (Emphasis added). Thus, based upon the clear language of I.C. § 6–902(2), claims against the hospital are governed by the ITCA, and no party has challenged the statute's applicability. The hospital is entitled to timely notification of any claims being presented against it pursuant to I.C. § 6–906. We address the medical malpractice preemption argument below.

I.C. § 6–906 provides:

All claims against a political subdivision arising under the provisions of this act ... shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

■ This Court has held that "[k]nowledge of facts which would put a reasonably prudent person on inquiry is the equivalent to knowledge of the wrongful act and will start the running of the [180 days]." *McQuillen v. City of Ammon,* 113 Idaho 719, 722, 747 P.2d 741, 744 (1987). The Court has further held that the statutory period begins to run from the occurrence of the wrongful act even if the full extent of damages is not known at that time. *Id. See also Ralphs v. City of Spirit Lake,* 98 Idaho 225, 227, 560 P.2d 1315, 1317 (1977). In a recent case, the Court of Appeals clarified the amount of knowledge required to begin the notice period: "The statute does not begin running when a person fully understands the mechanism of the injury and the government's role,

but rather when he or she is aware of such facts that would cause a reasonably prudent person to inquire further into the circumstances surrounding the incident." *Mallory v. City of Montpelier,* 126 Idaho 446, 448, 885 P.2d 1162, 1164 (Ct.App.1994). The claimant in *Mallory* had argued that the notice period should not start running until she knew the exact cause of her injury. The Court of Appeals held that "such an interpretation would allow a party to delay completion of an investigation for months or even years before submitting a notice under the [ITCA]." 126 Idaho at 449, 885 P.2d at 1165.

■ In the present case, Mrs. Mitchell delivered twin boys on July 20, 1992. Following the delivery, she was administered an overdose of magnesium sulfate causing immediate respiratory arrest, the initiation of an emergency "code blue" resuscitation procedure, and her transfer to the ICU unit at the hospital. The district court found, and there is no dispute, that the Mitchells were told of the overdose on that date. The hospital initially suggested that the overdose was caused by a malfunction in the infusion machine. In September 1992, the Mitchells were told that the overdose was not caused by a malfunction in the infusion machine, but rather was caused by a probable nursing error. The Mitchells argue that the 180–day notice period did not start to run on the day of the overdose since on that day they were given incorrect information as to the cause of the overdose. We disagree.

The Mitchells were aware of the overdose and respiratory arrest on the day the overdose occurred. The facts available to the Mitchells were sufficient to cause a reasonably prudent person to inquire further into the circumstances surrounding the incident. *Mallory,* 126 Idaho at 448, 885 P.2d at 1164. Furthermore, even if the cause of the overdose had been due to a malfunctioning infusion machine, and although there may be ultimate shared responsibility with a manufacturer in such a case, the hospital is entitled to timely notice of a potential claim. Thus, we hold that the 180–day period began to run on July 20, 1992, even though the Mitchells did not know the extent of the

injury and Mrs. Mitchell's damages or the extent to which the hospital was responsible.

### B. Neither The Phone Calls On January 8 And 13, 1993, Nor The Documentation Submitted By The Mitchell's Attorney To The Hospital On January 20, 1993, Constitute Notice Of A Tort Claim Under I.C. § 6–907.

A "claim" under the ITCA is defined as "[a]ny written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity ..." I.C. § 6–902(7) (1990). I.C. § 6–907 describes what the contents of a claim must be:

> All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damages, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose.

Because we hold that the 180–day notice period began to run on July 20, 1992, the last day on which the Mitchells could timely file a notice of tort claim was January 16, 1993. Hawkes, the Mitchells' attorney, claims that he had two telephone conversations with the hospital administrator, Peterson, on January 8 and 13, 1993. The Mitchells contend that these conversations constitute oral notice of their claim. However, there is nothing in the record disclosing exactly what Hawkes and Peterson discussed on January 8, 1993, other than possibly Peterson being advised that the Mitchells were threatened with a lawsuit by the hospital credit manager for the Mitchells' alleged failure to pay the ICU bills. With respect to the January 13, 1993 conversation, Hawkes stated the following in his supplemental affidavit:

> 6. Settlement of the claim was discussed on January 13th and Mr. Peterson confirmed an interest in resolving the claim informally and without publicity and specifically gave me the date of January 20th to meet with him to pursue it further and in detail. From my perspective we both expected to discuss the claim in further detail when we met but certainly when we talked on January 13th he made the promise of acknowledging the hospital's error and a good faith meeting [sic] follow-up meeting in giving me the January 20th date to meet.

This constitutes the entire record before the district court with respect to the Mitchells' notification to the hospital of their tort claim within 180 days from the date of the overdose. The district court, relying on *Friel v. Boise City Housing Auth.*, 126 Idaho 484, 887 P.2d 29 (1994), ruled that these telephone conversations did not constitute adequate notice. We agree.

We hold that the oral statements made by Hawkes to Peterson in January 1993 did not constitute the filing of a claim under the ITCA. A "written demand" is plainly required by the statute. I.C. § 6–902(7). As this Court has previously held, the purpose of the notice requirement is to

> "(1) save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties, (2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and (3) allow the state to prepare defenses."

*Pounds v. Denison*, 120 Idaho 425, 426–27, 816 P.2d 982, 983–84 (1991) (quoting *Farber v. State*, 102 Idaho 398, 401, 630 P.2d 685, 688 (1981)). *Compare Huff v. Uhl*, 103 Idaho 274, 276, 647 P.2d 730, 732 (1982) (Although not expressly a "written demand" pursuant to I.C. § 6–902(7), a written estimate of damages was held to provide sufficient notice of a tort claim because it contained enough information to alert the governmental agency that a claim was being prosecuted against it).

The Mitchells' argument that the documentation provided by Hawkes at the January 20, 1993 meeting with Peterson constitut-

ed notice of their claim is also without merit. This meeting and presentation of documentation was outside the 180-day notice deadline and thus, even if the contents of the documentation could be considered to provide adequate notice, it was not timely.

The Mitchells also argue that the hospital waived formal compliance of the ITCA notice requirement and should be estopped from raising that defense now.

█ The elements of promissory estoppel are as follows: " '(1) the detriment suffered in reliance was substantial in an economic sense; (2) substantial loss to the promisee acting in reliance was or should have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made.' " *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank,* 119 Idaho 171, 178 n. 2, 804 P.2d 900, 907 n. 2 (quoting *Mohr v. Shultz,* 86 Idaho 531, 540, 388 P.2d 1002, 1008 (1964)).

█ Hawkes claims he had two telephone conversations with Peterson on January 8 and 13, 1993. However, there is no evidence in the record to support an argument that the hospital made certain promises or representations to the Mitchells regarding their claim which would alleviate the need to file a formal notice of tort claim. To the contrary, the record indicates that Hawkes initiated these conversations with the hospital to resolve a billing dispute. Hawkes' affidavit is more specific with respect to the January 20, 1993 meeting with Peterson; however, as stated above, this date was outside the 180-day time limit to file the notice pursuant to I.C. § 6–906. Hawkes apparently did not file a notice of tort claim because he believed he was negotiating with the hospital and that it was not necessary. This is not a sufficient basis under the doctrine of promissory estoppel for failing to file the required notice. *See Avila v. Wahlquist,* 126 Idaho 745, 748, 890 P.2d 331, 334 (1995) (a claimant's statements to the adjuster that she had not been feeling well as a result of the car accident and would be seeking medical treatment were insufficient to provide notice that she intended to proceed further by bringing a tort claim.) Thus, we hold that promissory estoppel did

not waive the requirement of filing a notice of tort claim with the hospital on or before the 180-day deadline of January 16, 1993.

**C. The Medical Malpractice Prelitigation Statutes Do Not Preempt Application Of The ITCA Notice Requirements To The Hospital In This Case.**

█ Finally, the Mitchells argue that they were not required to comply with the ITCA notice requirements because the medical malpractice prelitigation statutes, I.C. § 6–1001, *et seq.,* are more specific and are therefore controlling over the more general ITCA. We find this argument also to be without merit.

The notice of tort claim requirements and the medical malpractice prelitigation process serve different purposes. The malpractice prelitigation statutes were enacted in response to the legislature's concern that physicians and hospitals be assured access to a liability insurance market. The legislature therefore declared that it is in the public interest to encourage nonlitigation resolution of claims against physicians and hospitals by providing for prelitigation screening of such claims. 1976 Idaho Sess. Laws, ch. 278, p. 953. These prelitigation statutes apply to both county-owned and private hospitals. The ITCA concerns the waiver of sovereign immunity. The purpose of the notice requirement is to alert the governmental entity within an acceptable period of time that a tort claim may be filed against it. Thus, both statutes are specific and govern specific types of litigation. The malpractice prelitigation statutes therefore do not preempt application of the ITCA.

**V.**

**CONCLUSION**

We hold that the 180-day notice requirement under the ITCA, I.C. § 6–906, began to run on the date of Mrs. Mitchell's overdose. The Mitchells had sufficient information on that day to be aware that they had a potential tort claim against the hospital.

We further hold that the Mitchells failed to provide adequate notice of their claim within

the 180–day time limit. The record shows that the telephone conversations between the Mitchells' attorney and the hospital administrator on January 8 and 13, 1993, did not comply with the requirements of I.C. § 6–907.

Finally, we hold that the medical malpractice prelitigation statutes do not preempt application of the ITCA because both statutes are specific and serve different purposes.

Accordingly, the district court's grant of summary judgment in favor of the hospital is affirmed.

No attorney fees on appeal. Costs on appeal to respondent.

TROUT, C.J., and JOHNSON and McDEVITT, JJ., concur.

SCHROEDER, Justice, dissenting.

I respectfully dissent from the Court's conclusion in part IV.A. that the 180–day notice requirement under the Idaho Tort Claims Act began to run on the date of Mrs. Mitchell's overdose. As the Court notes, I.C. § 6–906 provides that claims against a political subdivision shall be presented "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." I.C. § 6–906. Whether intentionally or not, hospital personnel misrepresented the cause of the injury to Mrs. Mitchell and this misrepresentation delayed discovery of the claim against the hospital.

Information concerning the cause of the injuries was within the hospital's reach, not Mrs. Mitchell's. The hospital personnel misled her to believe that her claim would be against a private manufacturer, not the hospital. No notice of tort claim would be necessary against the manufacturer. Not until the manufacturer established that there was no equipment malfunction was it known to Mrs. Mitchell that her claim was actually against the hospital for the negligence of one of its nurses.

Mrs. Mitchell, and counsel, were placed in a difficult position. She could file suit against the manufacturer based upon incomplete information and run the risk of an adverse award of attorney fees, perhaps against counsel, for pursuing an action without proper investigation. Alternatively, she could file a notice of tort claim against her trusted health care provider whose personnel told her that it was not the hospital's fault, potentially resulting in embarrassment to the hospital when Mrs. Mitchell was led to believe by the hospital that it was not at fault. Accusing an institution of misdeeds without an adequate basis is not something people of honor do. But now the hospital gains the benefit of misleading Mrs. Mitchell. Section 6–906 of the Idaho Code provides an easy exit from the dilemma of suing the manufacturer without adequate information or embarrassing the hospital with a claim that Mrs. Mitchell was told would have no basis.

The 180–day period for filing a notice of tort claim should be tolled for the time it took to discover that the claim was against the hospital, not the manufacturer. Whether the steps Mrs. Mitchell took within that time frame could satisfy the notice provisions of the Tort Claims Act should be determined by the district court.