59 P.3d 959

Stephen R. COBBLEY and Andrea
L. Cobbley, husband and wife,
Plaintiffs–Appellants,

v.

CITY OF CHALLIS, a governmental
entity, Defendant–Respondent.

No. 28591.

Supreme Court of Idaho,
Pocatello, September 2002 Term.

Nov. 1, 2002.

Stephen R. Cobbley and Andrea L. Cobbley, Challis, pro se appellants, argued.

Anderson, Nelson, Hall, Smith, Idaho Falls for respondent. Joel E. Tingey, Idaho Falls, argued.

WALTERS, Justice.

This case involves the timeliness of a notice of claim under the Idaho Tort Claims Act ("ITCA"). The case comes before the Court following the district court's grant of summary judgment to the City of Challis. The district court dismissed the action on the ground that the Cobbleys had failed to timely file their claim for damages as required by the ITCA, Idaho Code section 6–906, within 180 days from the date of their alleged loss. We vacate the dismissal and remand the case for further consideration.

## FACTS AND PROCEDURAL BACKGROUND

The Cobbleys have lived outside of Challis, Idaho, since 1973. They have operated an automotive paint and body shop out of their home intermittently since 1974. A road was constructed next to the Cobbleys' property in the 1980s allowing access to a recently built sewer treatment facility operated by the City of Challis. After the road was constructed, the Cobbleys began to experience problems with speeding cars and dust from the road. For several years the Cobbleys treated the unpaved road themselves to keep the dust problem under control. In the 1990s, increased traffic made it more expensive for the Cobbleys to treat the road by themselves.

In August 1999, the Cobbleys attended a Challis city council meeting and requested the City's assistance in dealing with the speeding cars and dust. At the meeting, Mr. Cobbley stated that the road had been deeded to the City for the sewer treatment facility and, therefore, it was his position that the City should have to maintain the road. The city council decided to review the matter with the County and the city attorney. The city attorney responded in September 1999 and concluded that the road was not within the City limits therefore it was not the City's responsibility to maintain it. He advised the City that he needed additional time to research into the ownership of the road. He further recommended that the city council do nothing with regard to maintaining or closing the road.

In January 2000, the city attorney sent a letter to the city council and the Cobbleys expressing his opinion that the City only held an easement over the road and that the City did not own the road. The city attorney recommended that the council do nothing with regard to maintaining the road or closing the road to the public. At the May 2000 city council meeting, the Cobbleys were informed that the City would not do anything to improve the road.

On July 6, 2000, the Cobbleys filed a claim against the City for property damages and emotional distress, pursuant to the ITCA. On October 27, 2000, the Cobbleys filed a com-

plaint against the City. The City filed a notice of appearance on November 28, 2000. On December 22, 2000, the Cobbleys filed a notice of intent to take default. The City then filed a motion for additional time to file an answer on December 27, 2000. The district court granted this motion on December 28, 2000, allowing the City until January 16, 2001, to file an answer.

Rather than filing an answer, the City filed a motion to dismiss the complaint, arguing that the Cobbleys' claim failed to comply with the notice requirements of the ITCA. The Cobbleys responded that they could not be expected to file the claim until they were sure, through a title report, that the City owned the property. The Cobbleys supported their argument by submitting exhibits in addition to the pleadings, and the district court treated the motion as one for summary judgment. A hearing was held and the district court took the matter under advisement. The district court, in a written opinion, granted the City's motion, concluding that the Cobbleys' claim was untimely under the ITCA. The district court held that the ITCA notice period commenced on September 14, 1999, and the Cobbleys' July 6, 2000, filing was outside of the 180-day limit. A judgment was entered dismissing the action with prejudice. The Court of Appeals affirmed the decision of the district court. The Cobbleys filed a petition for review, which was granted by this Court.

## ISSUES PRESENTED ON APPEAL

1. Did the district court err in dismissing the Cobbleys' complaint?
2. Did the district court err in granting the City an extension of time to file its answer?
3. Should the affidavit and documents attached to the Cobbleys' appellate brief be stricken?
4. Is either party entitled to attorney fees on appeal?

## STANDARD OF REVIEW

■ In an appeal from an order granting summary judgment, this Court uses the same standard of review as the district court did in ruling upon the motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.P.C. 56(c).

■ Generally, when considering a motion for summary judgment, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Construction Management Systems, Inc. v. Assurance Co. of America*, 135 Idaho 680, 682, 23 P.3d 142, 144 (2001). However, where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). *See also Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997).

## DISCUSSION

### I.

#### A. Filing Time

■ The ITCA provides "no claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act." I.C. § 6–908. Idaho Code § 6–906 proscribes the applicable time limit as:

All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omissions of the employee within the course and scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

■ The purpose of I.C. § 6–906 is to " '(1) save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties, (2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and (3) allow the state to prepare defenses.' " *Friel v. Boise City Housing Auth.,* 126 Idaho 484, 486, 887 P.2d 29, 31 (1994) (quoting *Pounds v. Denison,* 120 Idaho 425, 426–27, 816 P.2d 982, 983–84 (1991)).

■ The failure to file within the ITCA time limitation acts as a bar to any further action. *McQuillen v. City of Ammon,* 113 Idaho 719, 722, 747 P.2d 741, 744 (1987). "Compliance with the Idaho Tort Claims Act's notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate.... The notice requirement is in addition to the applicable statute of limitations." *Id.* This Court has held that the notice requirement begins running when a person is aware of such facts that would cause a reasonably prudent person to inquire further into the circumstances surrounding the incident even if the full extent of damages and the government's role are not known at the time. *Mitchell v. Bingham Mem'l Hosp.,* 130 Idaho 420, 423, 942 P.2d 544, 547 (1997); *see also Mallory v. City of Montpelier,* 126 Idaho 446, 448, 885 P.2d 1162, 1164 (Ct.App.1994) ("The statute does not begin running when a person fully understands the mechanism of the injury and the government's role, but rather when he or she is aware of such facts that would cause a reasonably prudent person to inquire further into the circumstances surrounding the incident.").

The Cobbleys assert that the district court acted arbitrarily when it determined that September 14, 1999, was when the ITCA 180–day time period began to run against the Cobbleys' claim. The Cobbleys assert that they were not fully apprised of the City's role with regard to the road and that the ownership information was essential to determine whether a claim against the City should be filed. The Cobbleys contend that the date should have been either January 11, 2000,

when the report from the city attorney was issued or July 3, 2000, when the Cobbleys received a title report establishing ownership of the road. Further, the Cobbleys argue that because this was a continuing tort the ITCA time limitation was tolled until the tortious conduct ceased.

The district court found that the Cobbleys had sufficient facts to formulate a claim by the first city council meeting the Cobbleys attended on August 10, 1999. The district court stated

the Cobbleys knew that the City owned and operated the sewage lagoon adjacent to their property, and that the road would have been used by the City to gain access to the lagoon; they knew that Cyprus had 'deeded' the property to the City. They knew by September 14, 1999 that the City would not pave the road, and that it would be reluctant to close the road. The time period began to run as early as 1981; but the latest date the Cobbleys could have reasonably known they had a claim against the City would have been September 14, 1999.

The district court did not address this case from the standpoint of a continuing tort, nor that the Cobbleys could pursue a claim for abatement of a nuisance an action that would not be limited by the requirements of the ITCA. As justification for the district court's omission, the City submits that the Cobbleys did not raise to the district court either the theory of continuing tort nor a claim for abatement of a nuisance. We note, however, that as pled by the Cobbleys in their complaint, the conduct of the City in refusing to abate the ongoing problems experienced by the Cobbleys from speeding vehicles and resulting dust, through some reasonable method of controlling traffic flows, gating, paving, or resurfacing the road to reduce dust, demonstrates nothing more than a claim alleging a continuous tort. A continuing tort has been defined as:

one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts,

not continual ill effects from an original violation.

*Curtis v. Firth,* 123 Idaho 598, 603, 850 P.2d 749, 754 (1993) (quoting 54 C.J.S. *Limitation of Actions,* § 177, at 231 (1987)). The Court has held that where a continuing tort appears the focus is on the acts complained of, rather than the damages, when determining when the ITCA 180–day notice period is triggered. *Farber v. State,* 102 Idaho 398, 630 P.2d 685 (1981).

Furthermore, the district court precluded the Cobbleys from amending their complaint when the court held that the original complaint was improper because the notice of tort claim was untimely. Had the court allowed the Cobbleys to amend their complaint, they could have specifically alleged a claim for abatement of a nuisance, which would not be an action to recover damages and subject to the constraints of the notice requirements under the Tort Claims Act. In her dissenting decision to the opinion of the Court of Appeals in this case, Judge Karen Lansing pointed out:

The Cobbleys' complaint expressly alleges that the City is causing or allowing a nuisance condition on its property that adjoins the Cobbleys' property. Thus, the question presented is when a nuisance claim arises for purposes of application of the tort claim notice of statute.

In the analogous circumstances of applying the statute of limitation to a nuisance claim, a continuing nuisance is treated like a continuing tort for which the limitations period begins to run anew for each repetition of the nuisance. The rule is described as follows in 58 AM.JUR.2D *Nuisances* § 307 (1989):

[W]ith regard to nuisance[s] which are continuing in nature, as to which every repetition of the wrong may create further liability and create a new cause of action, the statute of limitations does not run merely from the original intrusion with respect to property damage or personal injury, and cannot be a complete bar in any case where the nuisance is of a continuing character and the resulting encroachment has progressively increased up to the time of the commenc-

ing action. Rather, a new statute of limitations begins to run after each separate invasion of plaintiff's property. Thus, as to nuisances which are temporary or recurring in nature, the applicable statute of limitations may bar only those events that occurred more than the designated time period to the filing of the lawsuit, so that an action may be brought for damages accrued by the time of trial and occurring within the prescribed time before the filing of the lawsuit. Recovery may be had in an action for temporary or continuing nuisance for damages accruing within the statutory period next preceding the commencement of the action although more than the statutory period has elapsed since the creation of the nuisance.

Judge Lansing further pointed out that in *Curtis v. Firth, supra,* this Court held that in the case of a continuing tort, the statute of limitations does not begin to run upon the commencement of the tortious conduct but, rather, is tolled until the tortious behavior has ceased. She noted that the Court used a similar analysis in application of the statutory notice requirement in *Farber v. State, supra,* when the Court considered a tort claim against the state for damage allegedly caused to the plaintiffs in the course of a project for reconstruction of a street. The Farbers brought an action against the state and the contractor performing the work, alleging damages from the negligent planning, construction and design of the project. The Court noted that the State's conduct of which the plaintiffs complained 'is in the nature of a continuing tort.' *Id.* at 401, 630 P.2d at 688. The Court held that the notice period did not begin to run when the project or damage began, but rather, when the construction project was completed. The Court commented that this interpretation of § 6–905, as applied to continuing torts arising out of projects for which the State contracts, "is consistent with our announced policy of liberally construing statutes 'with a view to accomplishing their aims and purposes, and attaining substantial justice,' *Keenan v. Price,* 68 Idaho 423, 438, 195 P.2d 662, 670 (1948), and our generally liberal approach to interpreting the notice

requirement of the ITCA." *Id.* at 402, 630 P.2d at 689.

In many of the cases dealing with the continuing tort and the ITCA there is a definite starting or ending point that begins the running of the ITCA 180–day notice period. *See e.g. Mallory v. City of Montpelier,* 126 Idaho 446, 885 P.2d 1162 (Ct.App.1994) (plaintiff injured in city baseball field, although it was not known at the time the cause of the injury or that the city owned the baseball field, the ITCA notice period began on the day of the accident); *Farber v. State, supra,* (in suit against the State and the contractor performing the work, alleging damages from the negligent planning, construction and design of the reconstruction project of a street, ITCA notice period began when the construction project was complete rather than when the project or damage began). Here, there is a starting point at which the allegedly tortious conduct and damages began, however, the conduct continues; and the end is not determinable. There is a series of ongoing, discrete events or conduct and resultant damages allegedly arising from each incident.

The Cobbleys could have filed a notice of tort claim years ago when the road use providing access to the sewer treatment center increased, however, they chose to repair the road themselves. When the problem became too much for the Cobbleys to deal with, they went to the city council to seek assistance because they thought that the City had an ownership interest in the road. The City prolonged the Cobbleys' claim until the city attorney concluded that the City did not own the road and therefore was not going to close or maintain it. When the City realized it owned the road, it chose not to maintain the road for various reasons, leaving the road to continue to cause problems for the Cobbleys.

Upon filing their notice of claim, the Cobbleys could seek damages that resulted during the 180–day period preceding their notice. Aside from the question of recoverable damages, leave should be granted to the Cobbleys to amend their complaint by alleging a claim to abate a nuisance, should they so move. Such a claim would not be subject to the ITCA.

**B. Other Defenses**

The City argues that it does not have authority to repair or maintain a road outside of the City limits pursuant to I.C. § 50–313. Since the subject road is outside the Challis City limits, the City argues that the dismissal of the Cobbleys' complaint may be affirmed on this ground. Another ground to affirm the dismissal of the complaint argued by the City is that the City's activities were within its discretion based upon I.C. § 6–904 and its exercise of such discretion not to pave and maintain the road is immune from liability.

The City did not file an answer nor was a copy of the City's memorandum in support of its motion to dismiss included in the record. It appears from the Cobbleys' memorandum in opposition of the motion to dismiss that the City raised these issues to the district court; the Cobbleys argued that the City acted in its proprietary function when it operated the access road to the sewer lagoon and thereby should be liable for its acts and that the road is not a public road or highway within the meaning of I.C. § 50–313.

There is an insufficient record before this Court to make a determination on the City's suggested defenses, and these issues will need to be resolved by the district court.

**II.**

The Cobbleys contend that the district court abused its discretion in granting the City's motion for extension of time to file an answer. The Cobbleys complain that the district court's grant of the motion allowed the City to not only file an answer but to improperly file a motion to dismiss as well. The City asserts that the extension of time is within the discretion of the district court and that the Cobbleys have failed to show how the district court abused its discretion by granting the extension.

To review an exercise of discretion, this Court applies a three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision

by an exercise of reason. *Baxter v. Craney,* 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

The district court recognized that the City's motion to extend the time to file an answer was within its discretion. Accordingly, the district court granted the motion noting that since this was a matter involving a right-of-way which could require a lengthy time to review and investigate the nature and validity of the claim, it was reasonable to request additional time to file the answer. The district court further found that the request by the City was made in good faith and that the Cobbleys had shown no prejudice by allowing the extension of time. It is also notable that the district court did not grant the full amount of time requested by the City; rather, the court determined its own reasonable deadline.

There is nothing in the record to show that the district court abused its discretion in granting the City's motion for extension of time. This Court holds that the district court did not err in granting the City's motion for extension of time to file an answer.

## III.

The City contends that the affidavit and other documents attached to the Cobbleys' briefs should be stricken. The City points out that the documents are not a part of the clerk's record and therefore should not be considered upon appeal.

Here, as in the case of *State ex rel. Ohman v. Talbot Family Trust,* 120 Idaho 825, 827, 820 P.2d 695, 697 (1991) the documents were presented attached to the Appellants' opening brief on appeal that were not part of the official clerk's record. In this case, the affidavit and potentially some of the other documents were not even presented to the district court. This Court is "bound by the record and cannot consider matters or materials that are not part of or contained therein." *Id.* (citing *State v. Hodges,* 103 Idaho 765, 653 P.2d 1177 (1982); *Neer v. Safeway Stores, Inc.,* 92 Idaho 361, 442 P.2d 771 (1968); *Baldwin v. Singer Sewing Mach. Co.,* 48 Idaho 596, 284 P. 1027 (1930); *King v. Seebeck,* 20 Idaho 223, 118 P. 292 (1911)).

This Court did not consider the materials attached to the Appellants' opening brief, with the exception of Exhibit E, which was properly augmented to the record on November 5, 2001.

## IV.

Both parties seek an award of attorney fees on appeal. The Cobbleys are the prevailing party on appeal, however this Court does not award fees to a party appearing pro se. *Chapple v. Madison County Officials,* 132 Idaho 76, 81, 967 P.2d 278, 283 (1998) (citing *Curtis v. Campbell,* 105 Idaho 705, 672 P.2d 1035 (1983)).

## CONCLUSION

The judgment is vacated. The case is remanded to the district court for further consideration. No attorney fees are awarded. Costs to the appellants, pursuant to I.A.R. 41.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.